George W. TAYLOR *v.* James B. PHILLIPS

90-211                                              801 S.W.2d 303

Supreme Court of Arkansas
Opinion delivered December 21, 1990
[Rehearing denied February 4, 1991.*]

*Ponder & Jarboe*, by: *Dick Jarboe*, for appellant.

*Barrett, Wheatley, Smith & Deacon*, by: *Paul D. McNeill*, for appellee.

DALE PRICE, Justice. This is a medical malpractice case which was dismissed by the trial court because the two-year statute of limitations had run. Ark. Code Ann. § 16-114-203(a) (1987). The appellant, George W. Taylor, seeks reversal on the ground that he was undergoing "continuous treatment" during the statutory period. We agree and the judgment of dismissal is reversed.

Mr. Taylor's jaw was broken on September 7, 1987, when his face was struck by a trailer gate which had been kicked by a bull

---

*Dudley and Hays, JJ., would grant rehearing.

Taylor was loading into the trailer. In September 8, 1987, the appellee, James B. Phillips, an oral surgeon, performed surgery and placed Taylor's jaw in a brace which was screwed into the bone parts. On September 15, 1987, Taylor returned to Phillips' office for a follow-up visit. Phillips' notes indicate that the bone was healing but that the parts were slightly offset.

Taylor's next visit with Phillips was September 25, 1987, when an x-ray was made showing the slight offset. On that visit, Taylor complained to Phillips that the offset caused him to be unable to wear his false teeth. The x-ray made on that visit also revealed a lung tumor.

The next visit came on October 9, 1987, and on that date Phillips physically repositioned the bones. Phillips advised Taylor to wear the brace another eight to ten weeks.

The lung tumor was removed by another doctor on November 4, 1987. Phillips was consulted prior to that surgery about whether the brace would affect or be affected by tubes to be placed in Taylor's mouth. Phillips visited Taylor in the hospital on either November 4 or 5, 1987, and Taylor again complained about the jaw. Taylor was advised by Phillips that further surgery on the jaw was necessary and x-rays were made.

On December 8, 1987, Taylor returned to Phillips' office, and was seen, not by Phillips, but by another oral surgeon, Dr. Modelevsky, Phillips' partner, who observed that the bones were not healing properly. Modelevsky took x-rays and subsequently cut the brace in half and manually repositioned the jaw bones. On December 9, 1987, Phillips was consulted by Modelevsky, and agreed that further surgery in the form of a bone graft operation was indicated.

Suit was filed on October 16, 1989. The complaint alleged that Phillips "was negligent in his care and treatment" of Taylor, "including the failure . . . to advise that he could have a substantial scar" and that Taylor's "jaw did not heal properly and the failure of the jaw to heal was due to the failure of [Dr. Phillips] to treat and care for the jaw according to accepted standards." The complaint did not allege negligence in the performance of the surgery on September 8, 1987.

The record reflects that Taylor remained Phillips' patient

within the statutory period and that the brace Phillips had placed on Taylor remained in place until a time less than two years from the date the suit was filed.

This case presents a question about the continuous treatment doctrine, which we recognized and applied for the first, and only, time in *Lane v. Lane*, 295 Ark. 671, 752 S.W.2d 25 (1988). Mrs. Lane contended that her former husband, Dr. Lane, had, over an eighteen-year period, prior to and during their marriage, given her certain injections which caused scarring and drug addiction. She sought damages for the injury she had suffered from the injections over the entire period. Dr. Lane contended she could not recover for negligent acts alleged to have occurred more than two years prior to the filing of the action. Some of the injections had been given within the two-year period, and we applied the continuing treatment doctrine to hold that damages could be recovered for the injury even though some of the allegedly negligent acts occurred outside the statutory period.

We quoted the following definition of "continuous treatment" from 1 D. Louisell and H. Williams, *Medical Malpractice* § 13.08 (1982) in *Lane* as follows:

> [I]f the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuous treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has *terminated*—unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive. (Emphasis added.)

We stated in *Lane* that the doctrine's application in appropriate circumstances was proper. Since this court has only had one opportunity to consider the doctrine of continuing treatment, we will look to other jurisdictions to see under what circumstances it has been applied.

In *Samuelson v. Freeman*, 75 Wash.2d 894, 454 P.2d 406 (1969), the Washington Supreme Court applied the continuing treatment doctrine and stated:

> In construing the statute of limitations concerning medical

malpractice, we think it a sound rule that, if malpractice is claimed during a continuous and substantially uninterrupted course of treatment for a particular illness or condition, the statute does not begin to run until the treatment for that particular illness or condition has been terminated.

The patient in *Samuelson* had suffered a fractured femur, and the physician had performed surgery to reduce the fracture. He continued to observe and treat that particular condition for nearly three years following surgery.

In *Farley* v. *Goode*, 219 Va. 969, 252 S.E.2d 594 (1979), the appellant was treated by a dentist over a period of years. She alleged he was negligent in his diagnosis and treatment of her. The Supreme Court of Virginia held that when malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the cause of action accrues and the statute of limitations begins to run when the improper course of examination and treatment for the particular malady terminates.

The Texas Court of Appeals held in *Vinklarek* v. *Cane*, 691 S.W.2d 108 (Tex. Ct. App. 1985), that the statute of limitations applicable to medical malpractice claims began to run at the end of the last treatment for the condition for which the patient initially saw the physician. The appellant was treated over a period of time by a physician for an infection following oral surgery.

The appellant brought his action against a physician in *Waldman* v. *Rohrbaugh*, 241 Md. 137, 215 A.2d 825 (1966), on the theory of continuing treatment. The Maryland Court of Appeals stated that where the facts show continuing medical or surgical treatment for a particular illness or condition in the course of which there is malpractice producing or aggravating harm, the patient's cause of action accrues at the end of the treatment for that particular illness, injury or condition, unless he knew sooner or reasonably should have known of the injury or harm, in which case the limitation starts to run with actual or constructive knowledge.

The Wyoming Supreme Court noted in *Metzger* v. *Kalke*, 709 P.2d 414 (Wyo. 1985), that courts applying the doctrine uniformly hold that where the defendant physician has provided a continuing course of care for the same or related complaints, the cessation of treatment completes the "act" which starts the running of the statutory period for filing suit. The court held in that case the statute of limitations began to run with respect to the appellant's claims against the defendant physician on the date he last treated the appellant.

In this case, Taylor was clearly under a continuing course of treatment by Phillips, and so the statute did not begin to run until Taylor's treatment terminated on December 9, 1987. Taylor still had the brace screwed into his jaw bones on December 9 when Phillips and his partner agreed that Taylor needed further surgery on his jaw. Taylor's complaint against Phillips was filed on October 16, 1989, well within the statute of limitations.

To hold otherwise might require a plaintiff to bring suit against his or her physician before treatment is even terminated. This could conceivably afford the physician a defense that a patient left before treatment was terminated and before the physician had a chance to effectuate a proper result. Accordingly, the trial court erred in granting Phillips' motion to dismiss, and its judgment of dismissal is reversed.

Reversed and remanded.

NEWBERN, J., concurs.

DUDLEY and TURNER, JJ., concur in part and dissent in part.

HAYS, J., dissents.

DAVID NEWBERN, Justice, concurring. In *Lane* v. *Lane*, 295 Ark. 671, 752 S.W.2d 25 (1988), a course of treatment consisting of negligent acts in the form of improper injections continued until less than two years prior to the filing of the action. In this case the only treatment rendered by the doctor occurred more than two years before the action was filed unless it can be said that leaving the brace on Mr. Taylor constituted continuing treatment. I would be willing to join the court's opinion if it were limited to that simple conclusion. I am, however, able to concur only in the result because I believe the opinion may mislead future

litigants.

The majority opinion quotes the description of the "continuous treatment" doctrine we applied in *Lane* v. *Lane*, *supra*. It then says we recognized it was to be applied in "appropriate circumstances." Then follows a series of citations to cases which have applied the doctrine. There is no stated recognition that the problem in this case is whether Dr. Phillips's inaction subsequent to placing the brace on Mr. Taylor constituted "treatment." That is the issue, and it is a close one in the context of our medical malpractice statute of limitations which begins to run "the date of the *wrongful act* complained of *and no other time*." Ark. Code Ann. § 16-114-203(b) (1987) (emphasis supplied).

It should not be assumed by those reading the court's opinion that as long as a doctor-patient relationship continues, or there is a continuous course of non-treatment or omission, the statute does not begin to run. A review of the cases cited in the majority opinion shows that they do not support such a conclusion in a jurisdiction which has a statute such as ours.

In *Samuelson* v. *Freeman*, 75 Wash.2d 894, 454 P.2d 406 (1969), the Supreme Court of Washington admitted that "[a]n intrinsic quality of imprecision has emerged in the statute of limitations as it affects allegations of medical malpractice" as a result of some of its decisions and that this case "is not likely to make the statute seem more precise." The action was filed more than three years after Dr. Freeman had performed an operation. At the time the case was decided, apparently the general Washington three-year statute of limitations, R.C.W. 4.16.080(2), applied. No citation to it appeared in the opinion. (The statute was revised in 1971 to include a discovery rule.) The complaint at first alleged negligence in performance of the operation. It was amended at trial to allege "negligence in the examination, diagnosis, treatment and care, including negligent failure to diagnose and properly treat a bone infection" during the three years prior to the filing of the action.

The Washington Supreme Court applied the continuous treatment doctrine but did not specify whether any "acts" of treatment occurred during the three-year period. The Court wrote that the doctrine would make "a sensible corollary" to the discovery rule, a rule which this court has clearly rejected, as we

noted in the *Lane* case.

In *Farley* v. *Goode*, 219 Va. 969, 252 S.E.2d 594 (1979), which we cited and relied upon in the *Lane* case, the Virginia Supreme Court made it clear that "by 'continuous treatment' we do not mean mere continuity of a general physician-patient relationship; we mean diagnosis and treatment 'for the same or related illnesses or injuries, continuing after the alleged acts of malpractice. . . .' " The court noted parenthetically "that the rule applied . . . presupposes that a continuous course of improper examination or treatment which is substantially uninterrupted is proved as a matter of fact." It was noted that where the malpractice complained of constitutes a single, isolated act, however, the continuous treatment doctrine would not apply. In that case, a dentist had misdiagnosed the patient and had continuously done so into the statutory period while continuously working on her teeth and assuring her that she had no problem.

*Vinklarek* v. *Cane*, 691 S.W.2d 108 (Tex. Civ. App. 1985), was a summary judgment case. The court of appeals found there was evidence from which a fact question persisted as to whether continuing treatment had occurred. The evidence was that the doctor had seen the patient on several occasions after the original treatment for a lung infection. On some of them his notes reflected continued diagnosis of that problem and prescription for it. The court noted the distinction between a continuation of negligent acts and seemed to conclude that continuous treatment could include the facts presented, just as we did in the *Lane* case. The applicable Texas statute of limitations, Vernon's Ann. Texas Civ. St. art. 4590i, was unlike ours. It specifically included the continuous treatment doctrine and made no reference to a negligent act.

The majority opinion states that *Waldman* v. *Rohrbaugh*, 241 Md. 137, 215 A.2d 825 (1966), "stated that where the facts show continuing medical or surgical treatment for a particular illness or condition in the course of which there is malpractice producing or aggravating harm, the patient's cause of action accrues at the end of the treatment for that particular illness, injury or condition, unless he knew sooner or reasonably should have known of the injury or harm, in which case the limitation starts to run with actual or constructive knowledge." That was

not the holding of the case. The trial court had granted a doctor's motion for judgment on the pleadings. The Maryland Court of Appeals noted that there was no such motion recognized in Maryland practice. It did not reverse or affirm the case, but simply remanded it to the trial court to allow the plaintiff to amend his pleading.

In the course of the opinion, the Maryland court discussed in favorable terms both the continuous treatment doctrine and the discovery doctrine. It seemed to be recommending the discovery rule which, of course, we have specifically rejected because of the language of our statute.

In *Metzger* v. *Kalke*, 709 P.2d 414 (Wyo. 1985), the court recognized the continuing treatment doctrine, but there was no question about when treatment ended. Wyoming is a discovery rule state, and the only real issue in the case turned out to be whether discovery was presumed to have occurred when the husband of the patient sought advice of an attorney with respect to suspected malpractice before evidence was obtained from which malpractice might have been shown. Other than a general statement of the continuous treatment doctrine, in *obiter dictum*, the case seems to have no bearing on the one before us now.

Again, I feel future litigants should be warned that the language of the majority is broader than the facts of this case, or the holding in the *Lane* case justify. *See* Note, 11 *UALR L.J.* 405 (1988-89).

OTIS H. TURNER, Justice, concurring in part and dissenting in part. The plain and unambiguous wording of the Statute of Limitations relating to actions for medical malpractice begins to run from the date of the wrongful act complained of and at no other time. Ark. Code Ann. § 16-114-203(b) (1987).

It is unclear from a reading of the majority opinion that any recovery by the appellant would be limited to damages incurred as a result of *acts* of medical malpractice occurring *within* the two-year period of limitations, whether those acts be considered ones of commission or omission.

This appears to be the holding of the majority in its recognition that "the plaintiff's complaint did not allege negligence in the performance of the surgery," an event that occurred

outside the period of limitations. To that extent, I concur.

I dissent from any part of the majority opinion which might be construed to permit *any* recovery for acts or omissions that occur more than two years prior to commencement of the action, whether such recovery is based upon a theory of "continuing treatment," or "relation back," or any other similar theory. Under the statute, *no* recovery is permitted for any malpractice or resulting damages that occur outside the statutory period.

DUDLEY, J., joins.

STEELE HAYS, Justice, dissenting. I believe the majority has given *Lane v. Lane*, 295 Ark. 671, 752 S.W.2d 25 (1988), a broader reading than was intended by that decision. In *Lane* we specifically rejected applying the continuous treatment theory to nonfeasance, i.e., we did not mean to include the failure of a treating physician to correct a wrong as a continuing tort and, therefore, within the continuous treatment doctrine. Rather, the cause of action was to be the result of active malfeasance—a series of negligent acts or a continuing course of improper treatment. We quoted from *Farley v. Goode*, 219 Va. 969, 252 S.E.2d 954 (1979), that treatment should be looked at in its entirety and that within the context of the statute of limitations, the cause of action needed to be "coextensive with the tortious conduct and that the whole transaction [be] inherently negligent.' Obviously this is a close question, but when examined in its entirety, I believe it falls on the side of nonfeasance as opposed to active and continuous malfeasance.

One of the reasons for the continuous treatment rule as stated in *Lane* is that it can give the physician the opportunity to correct errors before harm ensues—that "it would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician." When the doctor-patient relationship has not been substantial enough to allow for such corrective action by the doctor, I would find that this purpose of the rule cannot be fulfilled and the doctrine should not be applicable. In other words, there must be some quantitative and qualitative measure of the treatment given, and it must rise to sufficient treatment for the application of the continuous treatment doctrine to be logically applied. So, for example, in *Davis v. City of New York*, 38 N.Y.2d 257, 379 N.Y.S.2d 721, 342

N.E.2d 516 (1975), the court found that where there was misdiagnosis by a city-run cancer detection center involving several contacts at intervals and surgery for cancer at another hospital, there was not continuous treatment, merely intermittent services which did not qualify as continuous treatment.

In this case I find the course of treatment insufficient to qualify for the application of the doctrine and I would affirm the trial court.