Bonnie HOBBS, Appellant,

v.

Dr. James J. NAPLES, Appellee.

No. 92–2201.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 15, 1993.

Decided May 14, 1993.

Cathleen V. Compton, El Dorado, AR, argued, for appellant.

J. Hawley Holman, Texarkana, TX, argued, for appellee.

Before LOKEN and HANSEN, Circuit Judges, and VAN SICKLE,* Senior District Judge.

HANSEN, Circuit Judge.

This diversity case involves a medical malpractice claim and the "continuous treatment" doctrine under Arkansas law. Bonnie

* The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

Hobbs sued her podiatrist, Dr. James J. Naples, for an allegedly negligent surgical procedure performed on her left foot. The district court [1] held that the claim was barred by the statute of limitations and granted summary judgment in favor of Dr. Naples. Hobbs appeals, and we affirm.

I.

On March 17, 1988, Dr. Naples surgically removed a bone in Hobbs's left foot that was causing calluses to form. Hobbs received post-operative care from Dr. Naples on March 23, 30, April 6, 13, 27, and June 1, 1988. During the next year, Hobbs contends that Dr. Naples trimmed the calluses on her feet once a week. Hobbs also contends that she visited Dr. Naples in April 1989, after injuring her foot while playing badminton. Medical records, however, do not indicate that Hobbs was treated in April 1989.

On April 12, 1991, Hobbs sued Dr. Naples and alleged in the complaint that Dr. Naples negligently performed the surgery on her left foot on March 17, 1988. Hobbs also alleged that Dr. Naples continued to treat her through April 1989 by trimming her calluses. After taking the depositions of Hobbs and Dr. Karen Seale, Hobbs's expert medical witness, Dr. Naples moved for summary judgment alleging that Hobbs's claim for medical injuries was barred by Arkansas's two-year statute of limitations. The district court granted summary judgment in favor of Dr. Naples. Hobbs appeals.

II.

We review de novo a district court's grant of summary judgment. *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir.1992). Therefore, we apply the same standard as applied by the district court. *United Tel. Co. of Mo. v. Johnson Publishing Co., Inc.*, 855 F.2d 604, 607 (8th Cir.1988). Summary judgment is appropriate when there is no dispute between the parties as to any genuine issue of material fact and when the moving party is entitled to

1. The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

judgment as a matter of law. Fed.R.Civ.P. 56(c). In addition, because the district court's jurisdiction was based on diversity grounds, this court reviews de novo questions of state law. *Salve Regina College v. Russell,* 499 U.S. 225, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

Hobbs contends her medical malpractice cause of action did not accrue until Dr. Naples stopped trimming her calluses sometime after April 1989. Because she filed her complaint on April 12, 1991, she argues that the district court erred in holding that her complaint was barred by the statute of limitations.

Under Arkansas law, a person who suffers a medical injury must bring a lawsuit within two years after a cause of action accrues. Ark.Code Ann. § 16–114–203(a) (Michie 1987). A cause of action accrues, and therefore the statute of limitations period begins to run, on the "date of the wrongful act complained of and no other time." *Id.* at § 16–114–203(b).

In *Lane v. Lane,* 295 Ark. 671, 752 S.W.2d 25 (1988), the Supreme Court of Arkansas broadened the definition of when a medical malpractice cause of action accrues by adopting the continuous treatment doctrine. The continuous treatment doctrine applies when the "medical negligence consists of a series of negligent acts, or a continuing course of improper treatment." *Id.* 752 S.W.2d at 27. The doctrine does not apply, however, if the plaintiff is able to identify the specific negligent treatment that caused the patient's injury. *Id.* In other words, where a single, isolated act constitutes the alleged act of medical malpractice, the continuous treatment doctrine does not apply.

In *Lane,* Dr. Lane treated his wife for migraine headaches for 18 continuous years from 1966 to 1984. *Id.* at 26. The treatments, which consisted of regular injections of narcotics, eventually caused scarring and drug addiction. *Id.* In 1985, Mrs. Lane divorced her husband and sued him for malpractice alleging that the treatments were negligently prescribed. *Id.* She sought damages for the injuries she suffered from the injections that she received over the 18 year period of time. *Id.* The Supreme

Court of Arkansas adopted and applied the continuous treatment doctrine because Dr. Lane tacitly conceded that his continuous treatment was improper and because Mrs. Lane did not know or should not have necessarily known that the continuous treatments caused her addiction. *Id.* at 28. Because there was no single, isolated act of negligence that caused Mrs. Lane's addiction and scarring, the continuous treatment doctrine was applicable.

In *Taylor v. Phillips,* 304 Ark. 285, 801 S.W.2d 303 (1990), the Supreme Court of Arkansas again applied the continuous treatment doctrine. In *Taylor,* Taylor's jaw was broken on September 7, 1987. *Id.* 801 S.W.2d at 303. Dr. Phillips performed surgery the next day and placed Taylor's jaw in a brace. *Id.* One week later, Dr. Phillips examined Taylor and indicated that the jaw was healing but that it was offset. *Id.* On October 9, 1987, Dr. Phillips physically repositioned the jaw bones and advised Taylor to wear the brace for another eight to ten weeks. *Id.* On November 4 and 5, 1987, Taylor was informed that additional surgery was required. *Id.* On December 8, 1987, Taylor visited with Dr. Modelevsky, one of Dr. Phillips's partners. *Id.* at 304. Dr. Modelevsky cut Taylor's jaw brace and manually repositioned the jaw bones. *Id.* The next day, after Taylor was informed that a bone graft was necessary, he left the care of Dr. Phillips and sought a second medical opinion. *Id.*

Taylor filed a medical malpractice complaint on October 16, 1989, alleging that Dr. Phillips was negligent in his post-operative, continuous care and treatment of his injuries. *Id.* Taylor did not allege, however, that Dr. Phillips negligently performed the surgery on September 8, 1987. *Id.*

The Supreme Court of Arkansas applied the continuous treatment doctrine and concluded that the two-year statute of limitations did not begin to run until Taylor's treatment terminated on December 9, 1987. Taylor still had the brace screwed to his jaw on December 9, 1987, and Dr. Phillips and Dr. Modelevsky both agreed that Taylor needed additional corrective surgery. *Id.* at 305.

 

After thorough review, we conclude that the continuous treatment doctrine is not applicable to Hobbs's case. Dr. Seale testified that the only negligent act by Dr. Naples involved his choice of the particular procedure used on Hobbs's foot. *See* Deposition of Dr. Seale, Appellant's Appendix, at 145–47. Consequently, there was a "single, isolated act" of alleged medical malpractice: the choice of the particular procedure used during the March 17, 1988, surgery. *See Taylor*, 801 S.W.2d at 306 (Newbern, J., concurring). Dr. Seale also testified that the procedure actually used on Hobbs's foot was correctly performed by Dr. Naples. Appellant's Appendix at 145–47. In addition, Dr. Seale stated that Hobbs was released from Dr. Naples's post-operative care or treatment on June 1, 1988. *Id.* at 143–44. Consequently, based on the testimony of Hobbs's own expert medical witness, the informal, weekly trimming of Hobbs's calluses did not amount to a "series of negligent acts or continuing course of improper treatment." *See Lane*, 752 S.W.2d at 27. The weekly trimmings also did not amount to corrective treatment but instead simply addressed Hobbs's underlying condition. Dr. Seale specifically stated that Dr. Naples was not at fault for performing these weekly trimmings because "there is never a guarantee that the calluses can be permanently prevented...." *See* Exhibit C, Addendum to Brief of Appellant, at 23. Finally, Hobbs admitted that she suspected something was wrong with her feet after the surgery but continued to have Dr. Naples trim her calluses on a weekly basis for more than one year after the conclusion of her post-operative care. *See* Deposition of Hobbs, Addendum to Appellant's Brief, at 25. Consequently, Hobbs "knew or should have known" that the surgery performed on March 17, 1988, caused her injury. *See Lane*, 752 S.W.2d at 28.

We also conclude that Hobbs's complaint is barred by the two-year statute of limitations period. Hobbs's cause of action accrued no later than June 1, 1988, when she was released from Dr. Naples's post-operative care. Hobbs filed her complaint on April 12, 1991.

Therefore, the two-year statute of limitations had run before she filed her complaint. Accordingly, we hold that a grant of summary judgment in favor of Dr. Naples is appropriate. We affirm the judgment and order of the district court.