**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

---

No. 97-1434

---

Deanna Slagle Roberts,     *
                            *
      Appellant,        *
                            * Appeal from the United States
      v.                  * District Court for the
                            * Western District of Arkansas.
Darryl Francis, M.D.; St. Edward   *
Mercy Medical Center,       *
                            *
      Appellees.        *

---

Submitted: September 9, 1997

Filed: October 20, 1997

---

Before RICHARD S. ARNOLD, Chief Judge, and FLOYD R. GIBSON and HEANEY, Circuit Judges.

---

HEANEY, Circuit Judge.

      This medical malpractice case comes to us from the district court's order granting summary judgment for the appellees. Under the applicable statute of limitations, the medical malpractice claim was time barred. Appellant, Deanna Slagle Roberts, advanced two theories under which the statute should be tolled: continuous treatment and fraudulent concealment. The district court granted summary judgment as to both theories. We affirm the district court's grant of summary judgment on the

continuous treatment claim and reverse and remand for trial on the fraudulent concealment claim. We also remand for further consideration on the issue of St. Edward Mercy Medical Center's potential liability to appellant.

I.

In reviewing the district court's grant of summary judgment, we view the facts in a light most favorable to Roberts, the nonmoving party. In late May 1990, appellant had surgery for severe urological problems. As part of her surgery, Dr. Darryl Francis, one of the two named defendants/appellees in this action, removed appellant's bladder. For reasons not explained in the record, Dr. Francis also removed Roberts' only remaining ovary. Roberts did not learn that her only remaining ovary had been removed until approximately September 1994 when she was treated by a different Dallas, Texas physician for continuing urological problems. Roberts also remained under the care of Dr. Francis until February 1996.

Roberts, an Oklahoma domiciliary, filed this diversity lawsuit in the United States District Court for the Eastern District of Oklahoma in June 1996 against Dr. Francis and the other named defendant/appellee, St. Edward Mercy Medical Center, the medical center where Roberts had her May 1990 surgery. Both of the named defendants were based in Arkansas. Pursuant to defendants' motion, the case was transferred to the United States District Court for the Western District of

2

Arkansas because of improper venue and the "interests of justice."

On February 4, 1997, the district court granted summary judgment in favor of defendants.[1]  This appeal followed.  Roberts raises three issues on appeal: first, whether

---

[1]Defendants initially filed a motion to dismiss and later filed a joint motion to dismiss plaintiff's amended complaint.  The district court converted these motions and plaintiff's responses into a summary judgment motion.

the statute of limitations is tolled because Dr. Francis fraudulently concealed the removal of her ovary; second, whether the statute is tolled under a continuous treatment theory; and finally, whether St. Edward Mercy Medical Center may be liable to her under respondeat superior principles.

II.

We first address appellant's fraudulent concealment claim. Arkansas requires that medical malpractice actions be filed within two years of the alleged wrongful act: "[A]ll actions for medical injury shall be commenced within two (2) years after the cause of action accrues. . . . The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time." Ark. Code Ann. § 16-114-203(a), (b) (Michie 1995 Supp.).

Under Arkansas law, fraudulent concealment of one's medical malpractice tolls the relevant statute of limitations. Treat v. Kreutzer, 720 S.W.2d 716, 717 (Ark. 1986) ("[A] complaint alleging facts showing a fraudulent concealment of medical injury is sufficient despite the fact that it was filed more than two years after the alleged injury occurred because fraudulent concealment tolls the statute of limitations") (citation omitted); Jones v. Central Ark. Radiation Therapy, 607 S.W.2d 334, 335 (Ark. 1980) ("[F]raudulent concealment of one's malpractice will toll the running of the statute of limitation") (citation omitted); Crossett Health Ctr. v. Croswell, 256 S.W.2d 548, 549 (Ark. 1953) ("[F]raudulent concealment will toll the statute. . . .") (citation omitted).

4

In this case, we find that Dr. Francis' fraudulent concealment of his alleged medical malpractice tolls the statute of limitations. It is undisputed that Dr. Francis removed appellant's only remaining ovary and failed to disclose this information to her. See Howard v. Northwest Ark. Surgical Clinic, P.A., 921 S.W.2d 596, 599 (Ark. 1996) (a physician's knowledge of the alleged wrong is a necessary prerequisite to tolling the statute) (citations omitted). In Union National Bank of Little Rock v. Farmers Bank,

5

<u>Hamburg Arkansas</u>, 786 F.2d 881 (8th Cir. 1986), we stated: "Under Arkansas law, a party may have an obligation to speak rather than remain silent, when a failure to speak is the equivalent of fraudulent concealment." <u>Id.</u> at 887 (citing <u>Berkley Pump Co. v. Reed-Joseph Land Co.</u>, 653 S.W.2d 128 (Ark. 1983)). With respect to when a duty to speak arises, the Arkansas Supreme Court has stated, "[t]he duty of disclosure . . . arises where one person is in [a] position to have and to exercise influence over another who reposes confidence in him whether a fiduciary relationship in the strict sense of the term exists between them or not." <u>Hanson Motor Co. v. Young</u>, 265 S.W.2d 501, 504 (Ark. 1954) (citation omitted).

In this case, "the alleged act of concealment is part and parcel of the wrongful act complained of," <u>Howard</u>, 921 S.W.2d at 600, and until a physician complies with his/her duty of disclosure or the patient independently discovers the alleged wrong, it continues for purposes of tolling the statute of limitations. <u>Id.</u> In interpreting Arkansas law, therefore, we can think of no clearer case where failure to disclose rises to the level of fraudulent concealment. Roberts was not informed before the surgery that it might be necessary to remove her ovary nor was she informed after the surgery that her ovary had been removed. Before she was informed in September 1994, Roberts had no way of knowing that her ovary had previously been removed. Given the special nature of the doctor-patient relationship, we hold that Dr. Francis was under a duty to inform Roberts that he removed her only remaining ovary.

6

Appellees rely heavily on <u>Norris v. Bakker</u>, 899 S.W.2d 70 (Ark. 1995), in arguing that Dr. Francis did not have an affirmative duty to inform Roberts that he removed her ovary. <u>Bakker</u> is easily distinguishable. In <u>Bakker</u>, a patient alleged that her dentist improperly examined her breasts while supposedly conducting a lymph node examination. The dentist denied touching his patient and pled the statute of limitations. While the patient knew of the touching, she argued that the dentist had an affirmative duty to disclose his improper conduct and that the statute of limitations should have been tolled until the disclosure was made. The court stated that "'[n]o mere ignorance

on the part of plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar.'" Id. at 72 (quoting Wilson v. General Elec. Capital Auto Lease, 841 S.W.2d 619, 620 (Ark. 1992)).

Unlike the patient in Bakker, Roberts was not simply ignorant of her rights. She was entirely unaware of the alleged wrongful conduct. In fact, she did not learn until September 1994, four years after her initial surgery, that Dr. Francis had removed her only remaining ovary. Thus, in a case where the plaintiff has full knowledge of the alleged wrong, a physician under Arkansas law may have no duty of disclosure.[2] In a case such as this, however, where the physician maintains primary control over the relevant information and the plaintiff is unaware of the alleged wrong, the physician has an affirmative duty of disclosure.[3]

––––––––––––

[2]In this regard, Roberts experienced great pain after her initial May 1990 surgery. She knew, however, that her bladder had been removed. She alleges that Dr. Francis should have advised her of less drastic measures than removing her bladder, particularly where he did so while she was awake but anesthetized. Nevertheless, Roberts possessed this information and could have sued within two years after the May 1990 surgery.

[3]In granting summary judgment, the district court found, and the parties did not dispute, that Roberts initially learned in September 1994 that her ovary was removed by Dr. Francis during her May 1990 surgery. At oral argument, however, attorney for appellees raised the issue of when Roberts initially discovered that her ovary had been removed. Because it was raised by appellees for the first time at oral argument, we decline to consider this issue on appeal. See Ryder v. Morris, 752 F.2d 327, 332 (8th Cir. 1985) ("As a general rule, a federal appellate court does not consider issues not raised below. . . .").

III.

In considering whether to grant summary judgment, a court examines all the "pleadings, depositions, answers to interrogatories . . . admissions on file . . . [and]

9

affidavits." Fed. R. Civ. P. 56(c). After the record is viewed in a light most favorable to the nonmoving party, summary judgment is appropriate only where there is "no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993) (citation omitted). We review a district court's grant of summary judgment de novo. United States ex. rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (1992).

When a federal court hears a diversity case, although the court applies the applicable state substantive law, the Federal Rules of Civil Procedure generally govern. Hanna v. Plumer, 380 U.S. 460, 465 (1965) (where there is no conflict with state procedure, Federal Rules of Civil Procedure clearly govern). Therefore, we must determine whether Roberts sufficiently pleaded fraud with particularity under Rule (9)(b) of the Federal Rules of Civil Procedure (Rule 9(b)), thereby entitling her to a trial on the merits.

The district court, without reaching the merits of Roberts' fraudulent concealment claim, granted appellees' motion for summary judgment. In the district court's view, plaintiff did not plead fraud with particularity. Roberts v. Francis, No. 96-2185, slip op. at 11-12 (W.D. Ark. Feb. 4, 1997). In viewing the evidence in a light most favorable to Roberts, we believe that there is a genuine issue of material fact and summary judgment was improperly granted.

Under Rule 9(b), "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be

10

stated with particularity." Fed. R. Civ. P. 9(b). When pleading fraud, a plaintiff cannot simply make conclusory allegations. Commercial Prop. Invs., Inc. v. Quality Inns Int'l, 61 F.3d 639, 644 (8th Cir. 1995). In Commercial Property Investments, Inc., we listed several factors a court should examine in determining whether the "circumstances" constituting fraud are stated with particularity under Rule 9(b). Id. at 644. These "circumstances" include the time, place, and contents of the

alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud. Id. (citation omitted).

In reviewing Roberts' amended complaint, her affidavit, and her new physician's affidavit, we find that they are sufficient under Rule 9(b)'s pleading requirements:
1) in her complaint, Roberts sufficiently pleaded the time period -- namely, that she learned around September 1994 that her only remaining ovary was removed; 2) in her affidavit, the place of the fraud is sufficiently described as St. Edward's Hospital in Fort Smith, Arkansas; 3) although there were no verbal "contents" of false misrepresentation, Dr. Francis had a duty of disclosure and Roberts sufficiently pleaded that she did not learn of the fraud until more than four years after her initial surgery;
4) Roberts sufficiently identified Dr. Francis as the individual committing the fraud; and 5) Roberts states in her complaint and supporting papers that she has endured great pain since her initial surgery, having had approximately forty surgeries since 1990 as a result of Dr. Francis' treatment.[4] Appellant, therefore, has also sufficiently argued what she has "given up" as a result of the alleged fraud.[5]

IV.

_____

[4]We do not determine what degree of harm plaintiff suffered due to removal of her ovary. This is an issue for a jury to determine on remand.

[5]We do not hold that a plaintiff must show all of these factors under Rule 9(b) to plead fraud with sufficient particularity. A plaintiff must state enough so that his/her pleadings are not merely conclusory.

Roberts also alleges that Dr. Francis is liable for medical malpractice under a continuous treatment theory. Continuous treatment, like fraudulent concealment, operates to toll Arkansas' two-year medical malpractice statute of limitations. <u>Lane v. Lane</u>, 752 S.W.2d 25, 26-27 (Ark. 1988). Where, however, a patient is able to identify the specific negligent treatment that caused his/her injury, the continuous

treatment doctrine does not toll the statute of limitations. Id. at 28; see also Hobbs v. Naples, 993 F.2d 173, 174-75 (8th Cir. 1993). In this case, we agree with the district court's holding that the continuous treatment doctrine is inapplicable:

> It is well settled that where a single, isolated act constitutes the alleged act of medical malpractice, the "continuous treatment" doctrine does not apply. A careful reading of Arkansas law indicates that the recognized exception is limited to those situations wherein a plaintiff cannot identify one treatment that produced his injury but where his injury was the result of several treatments -- a "cumulative effect." The evidence here shows that plaintiff was aware of the negligent act -- the surgery -- which caused her injury. . . . [T]he "continuous treatment" doctrine is inapplicable and does not extend the limitations period.

Roberts v. Francis, No. 96-2185, slip op. at 10-11 (W.D. Ark. Feb 4, 1997) (internal citation omitted).

V.

Finally, we address whether St. Edward Mercy Medical Center may be liable for Dr. Francis' fraudulent concealment under respondeat superior principles. While this is an issue for remand, we mention some guiding principles for the district court to consider.

Arkansas is one of the few American jurisdictions that still recognizes charitable immunity for hospitals. See H. Ward Classen, Hospital Liability for Independent Contractors: Where Do We Go From Here?, 40 Ark. L. Rev.

14

469, 470–71 n.3 (1987). Notwithstanding, the Arkansas Supreme Court has given the term "charitable immunity" a "rather narrow construction." Williams v. Jefferson Hosp. Ass'n, 442 S.W.2d 243, 244 (Ark. 1969). In applying Arkansas law, a reviewing court must determine whether a given hospital qualifies for charitable immunity, a threshold question before the court is able to determine whether a hospital is liable under

15

respondeat superior principles. Recently, the Arkansas Supreme Court cited with approval specific factors the Arkansas Court of Appeals applies when determining whether an individual hospital is wholly operated and maintained for charity:

> (1) Do the articles of incorporation provide that the purpose of the hospital is charitable in nature?
> (2) Is the corporation maintained for the private gain, profit or advantage of its organizers, officers or owners whether directly or indirectly?
> (3) Does the hospital have capital stock or does it have provisions for distributing dividends or making a profit?
> (4) Does the hospital derive its funds from public and private charity as well as those who are able to pay?
> (5) Do all "profits" go toward maintaining the hospital and extending and enlarging its charity?
> (6) Is the hospital open to all who are not pecuniarily able? (7) Are those patients who are unable to pay received into the hospital without charge, without discrimination on account of race, creed or color and are they given the same care as those who are able to pay?
> (8) Is the hospital exempt from the payment of both state and federal taxes?

Masterson v. Stambuck, 902 S.W.2d 803, 809-10 n.2 (Ark. 1995) (quoting Marion Hosp. Ass'n v. Lanphier, 688 S.W.2d 322, 324 (Ark. App. 1985)).

With this background in mind, the district court should analyze the above-mentioned factors, after both parties have submitted evidence, in determining whether St. Edward Mercy Medical Center qualifies for charitable

immunity.  It should be noted that the list of factors is "'illustrative, not exhaustive, and no one factor is dispositive.'"  <u>Masterson</u>, 902 S.W.2d at 810 (quoting <u>Davidson v. Colonial Williamsburg Found.</u>, 817 F. Supp. 611, 614 (E.D. Va. 1993)).  Assuming that the medical center does not qualify for charitable immunity, regular principles governing the doctrine of respondeat

superior should be applied in determining whether the medical center is liable to Roberts.[6]

## VI.

Consistent with this opinion, the judgment of the district court is reversed on Roberts' fraudulent concealment claim and remanded for trial; affirmed on her continuous treatment claim; and remanded for further consideration to determine the liability, if any, of St. Edward Mercy Medical Center.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]Because the record is not adequately developed as to the factors to be considered in determining charitable immunity or respondeat superior liability, we reserve opinion on these issues.