## Cleo RAYNOR and Jerome Raynor *v.*
## Dr. James KYSER

99-25                                     993 S.W.2d 913

### Supreme Court of Arkansas
### Opinion delivered July 8, 1999

*Lamar Porter*, for appellants.

*Friday, Eldredge & Clark*, by: *Laura Hensley Smith*, for appellee.

L AVENSKI R. SMITH, Justice. This is a medical malpractice case. Appellant, Cleo Raynor appeals the summary judgment entered against her by the Pulaski County Circuit Court

on the basis of Arkansas's two-year statute of limitations on medical malpractice claims. Raynor contends the statute was tolled by operation of the "continuous treatment" doctrine. Appellee, Dr. James Kyser, responds that the doctrine doesn't apply to the instant facts. We agree and affirm.

Raynor first sought and received medical care from Dr. Kyser in January of 1985. Dr. Kyser diagnosed her condition as nasal polyps, chronic sinusitis, which he surgically removed on January 15, 1985. The postoperative pathology revealed no malignancy.

In succeeding years, Raynor returned to Kyser for removal of polyps and papillomas in August 1988, and in July 1990. According to Raynor, Kyser told her she would need to see him indefinitely. Raynor made her last follow-up visit for the 1990 surgery in March of 1991. At that time, Dr. Kyser requested she return in six months. Dr. Kyser's office sent courtesy letters reminding Raynor about her follow-up on October 4, 1991, and February 8, 1993. On October 18, 1994, Raynor returned to Dr. Kyser's office. Kyser scheduled her for surgery one week later. The preoperative diagnosis was chronic obstructive rhinosinusitis. During surgery, among other things, multiple polyps were removed. After surgery Raynor returned for postoperative follow-up in November 1994. Dr. Kyser then told her to return in six months.

Raynor returned sooner than instructed at the request of her internist, Dr. Tommy Love, who she had seen with complaints of blurred vision. In March 1995, Dr. Kyser ordered an MRI for Raynor. The MRI revealed a large inverted papilloma in the maxillary sinus cavity. Dr. Kyser referred Raynor to Dr. James Suen who ordered a CT scan and then performed surgery excising a malignant inverted papilloma.

Raynor notified Kyser through counsel in June 1996 that she intended to make a malpractice claim against Kyser. Raynor, however, did not file suit until February 2, 1997. Kyser responded by answer and raised the affirmative defense of the statute of limitations. Kyser filed a motion for summary judgment in July 1997. Raynor filed a timely response asserting the "continuous treatment exception" to the two-year statute of limitations in medical negligence actions. Following oral arguments, the trial court granted

Kyser summary judgment on November 3, 1997, due to lack of contact between Kyser and Raynor between March 1991 and October 1994. The court also found that the statutory period had run for the treatment received in the fall of 1994 in that Raynor made no allegations of negligence beyond the November 1994 visit. Raynor filed notice of appeal on November 3, 1997. On December 23, 1998, the court of appeals affirmed the trial court's summary-judgment order on the same grounds stated in the trial court's order. We granted appellant's petition for review.

*Standard of Review*

On a petition for review, we consider the case as if it were originally filed with this court. *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998). The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). "Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997)." *Wallace v. Broyles*, 331 Ark. 58, 66, 961 S.W.2d 712 (1998).

The gravamen of this appeal concerns the application of Arkansas's medical practice statute of limitation and whether, under our case law and with the instant facts, that statute is tolled by operation of the "continuous-treatment doctrine." The relevant limitations statute, Ark. Code Ann. § 16-114-203, provides in pertinent part as follows:

(a) Except as otherwise provided in this section, all actions for medical injury shall be commenced within two (2) years after the cause of action accrues.

(b) The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time. However, where the action is based upon the discovery of a foreign object in the body of the injured person which is not discovered and could not reasonably have been discovered within such two-year period, the action may be commenced within one (1) year from the date of discovery or the date the foreign object reasonably should have been discovered, whichever is earlier. . . .

In the instant case, appellant concedes that unless the continuous-treatment doctrine tolls the limitations statute, her medical malpractice claim will be barred. Appellant contends that the doctrine enables her to have a valid action for negligent treatment covering the entire twelve-year doctor-patient relationship. In essence, appellant would have us hold that the continuous-treatment doctrine would apply to toll the statute coextensively with the physician-patient relationship, even if no continuing treatment occurs. We decline to do so.

■ We first applied the doctrine in *Lane v. Lane*, 295 Ark. 671, 752 S.W.2d 25 (1988). In *Lane*, plaintiff ex-wife sued her ex-husband, who was also her physician, for an eighteen-year course of narcotic-injection treatment for migraines. The treatment left her with fibrosis at the injection sites, loss of motion in her arm as a result of the injections, extensive scarring, depression and drug addiction. In *Lane*, we cited a medical malpractice treatise for a statement of the doctrine:

[I]f the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated — unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.

*Lane*, 295 Ark. at 673-674 (quoting 1D. LOUISELL AND H. WILLIAMS, MEDICAL MALPRACTICE § 13.08 (1982). Later in the

opinion we also stated, "the continuous treatment doctrine becomes relevant when the medical negligence consists of a series of negligent acts, or a continuing course of improper treatment." *Lane, supra,* at 675.

We have applied the doctrine to toll the operation of the limitations statute in only one other case, *Taylor v. Philips,* 304 Ark. 285, 801 S.W.2d 303 (1990). In *Taylor,* the patient suffered a broken jaw. The treatment was ineffectual and harmful, apparently at least in part due to improper use of a brace over the course of treatment. On September 8, 1987, Dr. Phillips performed surgery on Taylor's jaw and fitted the jaw with a brace screwed into the bones. The brace remained in place about three months at which time, on December 8, 1987, another physician observed that the bones were not healing properly. The brace was modified, and additional surgery had to be performed. Taylor subsequently sued Dr. Phillips for medical malpractice on October 16, 1989. Phillips defended citing the two-year statute of limitations, contending that the statute barred the action because it was filed more than two years after the surgery. We held that the patient, Taylor, had been under a continuing course of treatment by Phillips, and the statute did not begin to run until Taylor's treatment terminated on December 9, 1987. Taylor's October 16, 1989, filing was therefore within the limitations period and not barred. We have not expanded the doctrine since its adoption and specifically found it inapplicable to cases involving single or isolated acts of negligence.[1]

---

[1] In *Pastchol v. St. Paul Fire & Marine Ins. Co.,* 326 Ark. 140, 929 S.W. 2d 713 (1996), appellant alleged negligence in induction of anesthesia. Appellant's brother aspirated into his lungs and died ten days later while being transported to another hospital. We stated, "[T]hat doctrine [continuous treatment] was not designed to extend the statute of limitations period in cases where only a single, isolated act of malpractice or negligence is alleged." *Pastchol,* 326 Ark. at 145. The only contact with the brother had been the induction of anesthesia, and there was no allegation of negligence in the subsequent care. Likewise, in *Wright v. Sharma,* 330 Ark. 704, 956 S.W. 2d 191 (1997), we declined to apply the doctrine where a single negligent act of an unnecessary surgery was alleged. *See also, Hobbs v. Naples,* 993 F.2d 173 (8th Cir. 1993) and *Roberts v. Francis,* 128 F.3d 647 (8th Cir. 1997).

██ ██ The instant facts are distinguishable from *Lane* and *Taylor*. In both cases where we have applied the continuous treatment theory to toll the statute, the patient has received active, ongoing medical care and attention beyond the time of a specific negligent act or series of acts — that is, something more than the mere continuation of the physician-patient relationship. In the case at bar, active treatment of an existing patient condition ceased following Raynor's postoperative visit in November of 1994. Dr. Kyser's act of setting a future office visit six months later did not constitute the requisite continuous treatment needed to toll the statute. We have stated that one policy rationale for the continuous-treatment doctrine is to prevent the patient from having to interrupt the physician's treatment to bring suit. *Tullock v. Eck*, 311 Ark. 564, 845 S.W.2d 517 (1993).[2] Where there is no more physician-patient interaction occurring other than the scheduling of future visits, the policy is satisfied as there is no interruption of "treatment for the malady which was the object of the treatment. . . ." *Tullock,* 311 at 570. Were we to hold otherwise, we would no doubt come perilously close to embracing continuous-tort theory, which we have heretofore consistently rejected.[3]

██ ██ It is undisputed that appellant had no contact with Kyser for a three-and-one-half-year period from March 1991 until the fall of 1994. The trial court found that due to that lack of contact, claims for any act or acts of negligence between January 1985 and March 1991 were barred by the applicable two-year statute of limitations and granted summary judgment. We hold the trial court's ruling to be correct as to claims arising during this period and affirm.

We also affirm the trial court's ruling that the statute of limitations barred appellant's suit for medical malpractice attributable to Kyser's alleged negligence in the fall of 1994 where the action was not filed until February 1997. The facts simply do not indi-

---

[2] We declined to apply the doctrine in *Tullock* but did make important statements regarding its use.

[3] *See Treat v. Kreutzer*, 290 Ark. 532, 720 S.W.2d 716 (1986); *Owen v. Wilson*, 260 Ark. 21, 537 S.W.2d 543 (1976); and *Williams v. Edmonson*, 257 Ark. 837, 520 S.W.2d 260 (1975).

cate that Kyser engaged in active treatment of Raynor beyond the postoperative visit in November 1994 for the same malady. Although she did visit Kyser in March 1995 at the suggestion of another physician, we hold that visit to not be a part of a continuous treatment for the same malady. Accordingly, we affirm.