# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1687

_____

|  |  |  |
|---|---|---|
| Larry Hicks, brother of Jimmy Hicks, Deceased, | * * * | |
| | * | United States District Court |
| Appellant, | * | For the Western District of |
| | * | Arkansas. |
| v. | * | |
| | * | |
| Sinclair W. Armstrong, Jr., M.D., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 11, 2001

Filed: June 12, 2001

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and DOTY,[1] District Judge.

_____

BEAM, Circuit Judge.

Larry Hicks appeals a grant of summary judgment in favor of Dr. Armstrong based on the statute of limitations and argues that we should apply the continuous

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

treatment doctrine to toll the statute until his last postoperative follow-up appointment. Because the continuous treatment doctrine is inapplicable to these facts, we affirm.

## I.    BACKGROUND

In reviewing the district court's[2] grant of summary judgment, we view the facts in the light most favorable to the nonmoving party, the appellant. Jimmy Hicks, the appellant's deceased brother, sought treatment from Dr. Armstrong for erectile dysfunction. Dr. Armstrong performed two surgical procedures–one on October 11, 1996, and another on February 24, 1997. In the first procedure, Dr. Armstrong inserted a penile prosthesis and removed the suprapubic fat pad. Because the prosthesis was not working properly, Dr. Armstrong performed the second procedure to make adjustments to the prosthesis pump, remove additional fat and perform a circumcision. After the second procedure, Dr. Armstrong saw Hicks on five occasions for follow-up visits. The last visit occurred on August 22, 1997.

During this time, Hicks was unable to inflate or deflate the prosthesis. He had some continued swelling and pain in the surgically altered area and was suffering from concealed penis syndrome. In early September 1997, Hicks sought the opinions of two more physicians, one of whom performed another operation on December 1, 1997, to correct the problems Hicks was having with the prosthesis.

Hicks filed this medical malpractice action on August 10, 1999.[3] The parties agree that the Arkansas two-year statute of limitations for medical malpractice claims applies to this case. It is also undisputed that the action was filed over two years after

[2]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

[3]Shortly after filing the complaint, Jimmy Hicks died of unrelated causes and his brother, Larry Hicks, was substituted as the plaintiff.

the second allegedly negligent surgical procedure, but less than two years after appellant's last follow-up visit to Dr. Armstrong. The sole issue is whether the facts satisfy Arkansas' narrow continuous treatment exception to its statute of limitations.

## II.    ANALYSIS

Medical malpractice claims in Arkansas are subject to a two-year statute of limitations. Ark. Code Ann. § 16-114-203(a). The cause of action accrues on "the date of the wrongful act complained of and no other time." Ark. Code Ann. § 16-114-203(b). Arkansas courts view this language as a strong command by the legislature not to adopt more lenient approaches to the determination of the accrual of a cause of action, such as discovery of the injury or continuous tort.[4] See, e.g., Treat v. Kreutzer, 720 S.W.2d 716, 718 (Ark. 1986). The continuous treatment doctrine represents an effort to deal with medical treatments that are of an ongoing nature and/or that make it difficult to identify any isolated act of negligence. Cf. Raynor v. Kyser, 993 S.W.2d 913, 915 (Ark. 1999) (stating that the doctrine becomes relevant when the negligence consists of a series of negligent acts or a continuing course of improper treatment). The same defining passage has been cited in every Arkansas case to consider the continuous treatment doctrine:

> "If the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated unless during treatment the patient

---

[4]Under a discovery of the injury rule, the statute would not begin to run until the injury was discovered, regardless of when a negligent act was committed. A continuing tort theory is similar in that the ongoing harm from a single negligent act tolls the statute until that harm is discovered. See Lane v. Lane, 752 S.W.2d 25, 27 (Ark. 1988).

> learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive."

Lane v. Lane, 752 S.W.2d 25, 26-27 (Ark. 1988) (quoting D. Louisell and H. Williams Wachsman, Medical Malpractice § 13.08 (1982)).

The continuous treatment doctrine has been applied in two cases in Arkansas. In Lane, over the course of eighteen years the plaintiff had been given injections of various narcotics by her physician husband as treatment for migraine headaches. 752 S.W.2d at 26. The plaintiff alleged this negligent treatment caused injuries, including drug addiction, depression and fibrosis of the shoulder. Id. The Arkansas Supreme Court adopted the continuous treatment doctrine and found that under those circumstances the statute of limitations did not begin to run until the final treatment. Id. at 28. The court gave several rationales for the doctrine. First, a plaintiff should not be barred from recovering just because she could not pinpoint a single treatment that caused her injury, particularly where the injury resulted from the cumulative effects of several treatments. Id. at 27. Second, it would be "absurd" to require a plaintiff to interrupt ongoing treatment to serve a summons on her physician. Id. Lastly, it is reasonable to give a physician who has made a mistake (such as a misdiagnosis), a chance to correct it before harm ensues. Id. While this language seems to somewhat apply to the facts of the present case, Arkansas courts have been reluctant to fully embrace the continuous treatment doctrine under similar circumstances.

In Taylor v. Phillips, 801 S.W.2d 303 (Ark. 1990), the plaintiff sought treatment for a broken jaw. Defendant surgically repaired the jaw and placed a brace on it, but over the course of several follow-up visits the jaw bones did not properly heal. Id. Ultimately, the brace was removed and a second surgery was performed to correct the problem. Id. at 304. In his complaint, the plaintiff did not allege negligence in the initial surgery, but rather in the entire course of follow-up care. The court found the continuous treatment doctrine applied because the complaint alleged that the jaw failed

to heal properly due to negligence in the care and treatment provided by the defendant and the statute did not begin to run until the allegedly negligent course of treatment ended. Id. at 305.

Appellee argues that several Arkansas and Eighth Circuit cases hold that the continuing treatment doctrine only applies where there are no isolated specific acts that caused the injury and the harm is cumulative from numerous treatments, barring its application in this case. See, e.g., Roberts v. Francis, 128 F.3d 647, 651 (8th Cir. 1997) ("It is well settled that where a single isolated act constitutes the alleged act of medical malpractice, the 'continuous treatment' doctrine does not apply.").

A brief review of the other Arkansas cases declining to apply the doctrine reveals that, unlike the present case, they involved situations where the only continuing contact between the physician and the patient, if any, was a mere continuation of the general physician-patient relationship, the follow-up care relating to any negligent course of treatment also occurred outside of the limitations period, or there were no allegations of negligence in the follow-up care. See Raynor, 993 S.W.2d at 916; Wright v. Sharma, 956 S.W.2d 191, 193 (Ark. 1997); Pastchol v. St. Paul Fire & Marine Ins., 929 S.W.2d 713, 714 (Ark. 1996); Tullock v. Eck, 845 S.W.2d 517, 518-19 (Ark. 1993).

These cases indicate that the continuous treatment doctrine may operate to toll the statute in a situation where the allegedly negligent follow-up care is directly related to earlier specific acts of negligence and continued into the limitations period. See Raynor, 993 S.W.2d at 916 ("the active treatment of an existing patient condition ceased *following [plaintiff's] postoperative visit*" and the statute of limitations began to run on that date) (emphasis added); Hobbs v. Naples, 993 F.2d 173, 175 (8th Cir. 1993) (same); see also Pastchol, 929 S.W.2d at 715 (declining to apply the doctrine although the plaintiff remained under the doctor's general care because this was insufficient to demonstrate "a continuing course of *improper* treatment which would toll

the statute of limitations") (emphasis in original); <u>Tullock</u>, 845 S.W.2d at 521 (stating that the continuous treatment doctrine becomes relevant "where the medical negligence consists of a negligent act, followed by a continuing course of treatment for the malady [or condition] which was the object of the negligent treatment or act").

Although in the present case the record shows that Hicks' five office visits from February 28, 1997, to August 22, 1997, were follow-up visits concerning his condition after the penile prosthesis procedures, this is not a situation where the continuous treatment doctrine tolls the statute of limitations. Were this case from a jurisdiction that had more broadly construed the continuous treatment doctrine, we might be inclined to allow these claims to go forward. However, our duty is to apply Arkansas law as the Arkansas state courts would apply it in light of the specific restrictive language of the statute of limitations.

As initially filed, the complaint only alleged negligence in the performance of the two operations, and not in the continuing, postoperative treatment. Appellant amended the complaint to include the allegation that Dr. Armstrong "failed to properly and adequately treat, diagnose and repair the medical conditions . . . incurred as a result of the two surgical procedures." This allegation is somewhat similar to the claim made in <u>Taylor</u>,[5] which satisfied the continuous treatment doctrine, and on its face calls the doctrine into play.

However, because this involves a summary judgment motion made by the appellee, the appellant "may not rest upon the mere allegations or denials of [his] pleading." Fed. R. Civ. P. 56(e). Rather, he must "go beyond the pleadings and by

---

[5]In <u>Taylor</u>, the plaintiff alleged that the defendant had been "negligent in his care and treatment" of the plaintiff and that plaintiff's jaw "did not heal properly and the failure of the jaw to heal was due to the failure of [defendant] to treat and care for the jaw according to accepted standards." <u>See</u> <u>Taylor</u>, 801 S.W.2d at 304.

[his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate, 'specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). Here, in opposition to the motion for summary judgment, appellant offers medical records and notes of the several physicians who treated Hicks, but they fail to establish a genuine issue.

While appellant's pleadings are similar to those in Taylor, when viewed in conjunction with the undisputed facts in the record, it is clear the alleged injuries and damages stem from the surgeries rather than the follow-up care and the injuries were not of a cumulative nature that prevents us from identifying which individual acts caused the damages. Appellant's claims directly linked to the surgeries are that Dr. Armstrong, "unnecessarily removed the suprapubic fat pad;" "improperly performed a penile implant;" "improperly performed a circumcision;" and "inserted the penile implant pump in Jimmy Hicks' left testicle in such a manner so as to cause it to lose blood supply and subsequently infarct resulting in the loss of the left testicle." The injuries and damages alleged are inability to perform sexually, difficulty urinating, depression, additional medical expenses, pain, suffering and mental anguish, and loss of enjoyment of life.

A review of the medical records and physicians' notes offered by appellant in opposition to the motion for summary judgment show a possible connection between the allegedly negligent acts that occurred during the surgeries and the claimed injuries. For example, the physician who performed a revision of Hicks' implant in December 1997, wrote in his case notes that the implant seemed to be too small for Hicks. However, there is nothing in the record that would support the allegation of negligence in the follow-up care or link any postoperative negligence to the claimed injuries.[6]

---

[6]Comparing these facts to Taylor further demonstrates that the continuous treatment doctrine is inapplicable here. In Taylor, the sole claim of negligence related

Without more specific facts or allegations relating to the follow-up care, we can only conclude that the addition of the negligence-in-postoperative-care claim is simply an attempt at artful pleading to extend the limitations period. Thus, although appellant's pleadings call into question the continuous treatment doctrine, he has failed to meet his burden of producing evidence that would support application of the doctrine.

Finally, we note that only the last follow-up visit Hicks made to the appellee fell within the two-year limitations period. At best for appellant, only negligence and damages arising from that visit could be actionable in any event. However, appellant has presented no facts to support any claim of negligence during that particular visit, nor any damages that would have flowed from that examination. Therefore, summary judgment for the appellee was clearly proper.

## III. CONCLUSION

Accordingly, we affirm the grant of summary judgment in favor of the appellee.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

to the *overall course* of postoperative treatment and the complaint did not allege any negligence in the surgery, which had occurred outside of the limitations period. 801 S.W.2d at 304. The plaintiff in Taylor had submitted to four follow-up visits during which the doctor took x-rays, adjusted the brace on his jaw, and attempted to reset the bones to correct the fact that they were offset and not healing properly because of the negligent postoperative care. Id. at 303-04.