Lorine PASTCHOL *v.* ST. PAUL FIRE & MARINE
INSURANCE COMPANY, as Insurer of Magnolia Hospital;
Scott McMahen, M.D., P. A.; Dan Bocan, C.R.N.A.; P. Clark,
R.N.; K. Whitehead, R.N.; and R. Canterbury, R.N.

95-1167                                    929 S.W.2d 713

Supreme Court of Arkansas
Opinion delivered September 30, 1996

*David J. Potter,* for appellant.

*Anderson & Kilpatrick,* by: *Overton S. Anderson* and *Mariam T. Hopkins,* for appellee St. Paul Fire & Marine Ins. Co. as insurer of Magnolia Hospital; Dan Bocan, C.R.N.A.; K. Whitehead, R.N.; and R. Canterbury, R.N.

*Shackleford, Shackleford & Phillips,* by: *Dennis Shackleford,* for appellee Scott McMahen, M.D.

*Dunn, Nutter, Morgan & Shaw,* by: *Gary Nutter,* for appellee P. Clark, R.N.

DONALD L. CORBIN, Justice. Appellant, Lorine Pastchol, appeals the order of the Columbia County Circuit Court granting summary judgment to appellees, St. Paul Fire & Marine Insurance Company, Scott McMahen, Dan Bocan, P. Clark, K. Whitehead, and R. Canterbury, on the ground that the statute of limitations expired prior to the filing of this medical malpractice claim involving the death of her brother. Jurisdiction is properly had in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(3) and (16). In support of this appeal, appellant contends the trial court erred in granting summary judgment in applying the wrong statute of limitations; in disregarding the doctrine of continuous treatment; and in refusing to allow appellant to substitute herself as decedent's administratrix as the real party in interest to this action pursuant to Ark. Code Ann. § 16-62-101 (1987). We affirm the judgment of the trial court.

Rule 56(c) of the Arkansas Rules of Civil Procedure provides that summary judgment is to be rendered only in those instances where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden of sustaining a motion for summary judgment is the responsibility of the moving party. *Tullock* v. *Eck,* 311 Ark. 564, 845 S.W.2d 517 (1993). All proof submitted must be viewed in a light most favorable to the non-moving party and any doubts or infer-

ences must be resolved against the moving party. *Green* v. *National Health Labs., Inc.*, 316 Ark. 5, 870 S.W.2d 707 (1994).

## PROCEDURAL HISTORY

Appellant filed her original complaint on September 7, 1993, alleging a cause of action against appellees for medical malpractice and the wrongful death of her brother Idell Burton. Two amended complaints were subsequently filed. According to those complaints, Mr. Burton was admitted to the Magnolia Hospital in Magnolia, Arkansas, on August 25, 1991, complaining of abdominal pain, nausea, and vomiting. The following day, surgery was performed on Mr. Burton to repair a perforated duodenal ulcer. While he was receiving anesthesia, but before the surgery had begun, Mr. Burton vomited and aspirated the contents of his stomach, depositing said contents into his lungs. Appellant alleges that as a result, Mr. Burton's lungs were severely damaged and that the aspiration of the stomach contents into his lungs was the result of the negligent conduct of the appellees. Mr. Burton died during transport to Baptist Medical Center in Little Rock, Arkansas, on September 5, 1991.

Appellees subsequently filed motions for summary judgment and dismissal on the basis that appellant's claim was barred by the statute of limitations and that appellant had no standing to bring suit. The trial court granted appellees' motions and dismissed the case based on its findings that appellant's claim was filed after the expiration of the two-year statute of limitations period provided in the Medical Malpractice Act at Ark. Code Ann. § 16-114-203 (1987). The trial court reasoned that because appellant alleged a medical injury to the decedent, the suit was one of medical malpractice, rather than wrongful death, and that the date the cause of action accrued was the date the decedent underwent surgery, August 26, 1991. Additionally, the trial court determined that appellant had no standing to pursue a claim of survival pursuant to section 16-62-101, as she was not the executor nor administrator of the decedent's estate and therefore not a proper party to bring suit.

## I. STATUTE OF LIMITATIONS

Appellant argues that this case is one of wrongful death, not medical malpractice, and as such the trial court should have applied the three-year statute of limitations for wrongful-death actions as provided in Ark. Code Ann. § 16-62-102 (1987), instead of the

two-year period for medical malpractice actions found in section 16-114-203. Appellant asserts that these two causes of action are separate and distinct even though the cause of death in this case is alleged to have resulted from a medical injury. Our case law does not support appellant's position.

■ In the recent case of *Hertlein* v. *St. Paul Fire & Marine Ins. Co.*, 323 Ark. 283, 914 S.W.2d 303 (1996), we reaffirmed our holding in *Ruffins* v. *ER Arkansas, P.A.*, 313 Ark. 175, 853 S.W.2d 877 (1993), and recognized that the Medical Malpractice Act applies to all causes of actions for medical injury arising after April 2, 1979, and that it supersedes any inconsistent provision of law. Ark. Code Ann. § 16-114-202 (1987). In an effort to resolve the conflict between the two actions and their respective statutes of limitations, we concluded in *Hertlein* that any medical injury, even one resulting in the death of a person, is governed by the Medical Malpractice Act and not the wrongful-death statute. Thus, the controlling statute of limitations is the two-year period found in section 16-114-203(a), which provides that, "[a]ll actions for medical injury shall be commenced within two (2) years after the cause of action accrues." Ark. Code Ann. § 16-114-201(3) (1987) defines medical injury as:

> any adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider, whether resulting from negligence, error, or omission in the performance of such services; or from rendition of such services without informed consent or in breach of warranty or in violation of contract; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services.

■ Clearly, the case at hand involves a medical injury; thus, appellant's cause of action is one of medical malpractice, which must have been filed within two years after the cause of action accrued. We therefore conclude the trial court was correct in applying a two-year statute of limitations period. Given that, our inquiry must now focus on the more complicated issue of when this cause of action accrued.

## II. ACCRUAL OF THE CAUSE OF ACTION

■ Section 16-114-203(b) provides that the date a cause of action for medical malpractice accrues is "the date of the wrongful act complained of *and no other time.*" (Emphasis added.) Appellant argues that this cause of action accrued on the date of the decedent's death, September 5, 1991, based on the common-law doctrine of continuous treatment. Appellees argue that the applicable date in this case is August 26, 1991, the date the decedent underwent surgery and the date on which the alleged wrongful act complained of occurred. Appellees further argue that the doctrine of continuous treatment does not apply in this case because the only act or wrong complained of was the single, isolated incident which occurred during surgery. Appellees support this position by pointing out that appellant does not allege any acts of malpractice occurring during any treatment *after* the surgery. Moreover, during oral argument before this court, counsel for appellees stated, and counsel for appellant did not contest on rebuttal, that appellees did not even participate in the post-surgery treatment of the decedent.

Appellant concedes that the only act of negligence alleged is that which occurred during the induction of anesthesia before the decedent's surgery on August 26, 1991. Appellant also admits that the post-surgery treatment of the decedent was proper; however, she maintains that because the decedent was continually under medical treatment until his death, the cause of action did not accrue until the date of the decedent's death. We believe appellant's reliance on the doctrine of continuous treatment is misplaced, as that doctrine was not designed to extend the statute of limitations period in cases where only a single, isolated act of malpractice or negligence is alleged.

■ This court adopted the continuous treatment doctrine in *Lane v. Lane,* 295 Ark. 671, 752 S.W.2d 25 (1988). In that case, Dr. Lane had given narcotic injections to his wife over the course of many years to treat her migraine headaches. As a result of the injections, Ms. Lane suffered scarring and drug addiction. Dr. Lane moved for summary judgment and a directed verdict on the ground that the statute of limitations barred the claim, but the trial court denied his motion even though the initial injurious treatment occurred more than two years before suit was filed. In recognition of the validity of the continuous treatment doctrine, we held that:

> In contrast to the so-called continuing tort theory, based on a single negligent act, the continuous treatment doctrine becomes relevant *when the medical negligence consists of a series of negligent acts, or a continuing course of improper treatment.*

*Id.* at 675, 752 S.W.2d at 27 (emphasis added).

We further concluded that the doctrine's application is proper in situations where a patient receives a series of treatments for which no single treatment caused the harm; rather the harm resulted from the cumulative effect of the multiple treatments. In such a situation it would be unfair to require the patient to pinpoint the one particular treatment which caused the injury. That is clearly not the situation before us. In the case at hand, there was no series of improper or negligent treatments which would make it difficult for appellant to identify the act which caused the medical injury. To the contrary, appellant points to but one act of negligence, namely the decedent's aspiration during the administration of anesthesia. The facts of this case are thus distinguishable from those present in the *Lane* case.

Similarly, in *Taylor v. Phillips*, 304 Ark. 285, 801 S.W.2d 303 (1990), this court applied the continuous-treatment doctrine. In that case, Dr. Phillips had performed oral surgery on Mr. Taylor, placing a brace in his jaw on September 8, 1987. During subsequent follow-up visits with Dr. Phillips, Mr. Taylor complained of various problems with the brace. At one point during the course of the treatment, Dr. Phillips repositioned the jaw bones and advised Mr. Taylor to continue to wear the brace. Approximately one month later, Mr. Taylor again complained about the jaw, and this time Dr. Phillips advised that further surgery would be needed. In the meantime, on December 8, 1987, Mr. Taylor consulted with Dr. Phillips's partner who took x-rays of the jaw and manually repositioned the jaw bones after cutting the brace. On December 9, 1987, Dr. Phillips consulted with his partner and both agreed that further surgery in the form of a bone graft operation was needed. Mr. Taylor filed suit on October 16, 1989, alleging that Dr. Phillips was negligent in his care and treatment of Mr. Taylor. Based upon those facts, this court held that the application of the continuous-treatment doctrine was proper based upon our prior ruling in *Lane* as well as the holdings of various cases in other jurisdictions.

One of the cases relied upon by the majority in *Taylor*, was *Farley* v. *Goode*, 252 S.E.2d 594 (1979). In *Farley*, the appellant was treated by a dentist over a period of years and she alleged that his diagnosis and treatment of her was negligent. The Supreme Court of Virginia held that when malpractice is alleged to have occurred during a continuous and substantially uninterrupted course of examination and treatment, the cause of action accrues and the statute of limitations begins to run when the improper course of examination and treatment for the particular malady terminates. In a concurring opinion in *Taylor*, it was pointed out that the Virginia court in *Farley* noted that where the alleged malpractice constitutes a single, isolated act, the continuous-treatment doctrine would not apply. *Taylor*, 304 Ark. 285, 801 S.W.2d 303 (Newbern, J., concurring), (citing *Farley*, 252 S.E.2d 594).

The facts of this case differ considerably from the facts present in *Taylor*, 304 Ark. 285, 801 S.W.2d 303. Unlike the situation in *Taylor*, appellant concedes that the treatment of the decedent following surgery was entirely proper. In the *Taylor* case, the complaint alleged that Dr. Phillips was negligent in his overall care and treatment of Mr. Taylor; the complaint did not allege any negligence in the surgery performed on September 8, 1987. In other words, the complaint in *Taylor* can be distinguished on the bases that there was no allegation that a single, isolated act of negligence caused Mr. Taylor's injury; rather, the complaint alleged his injury stemmed from the entire series of negligent treatments of his jaw injury.

In our most recent application of this doctrine, *Tullock*, 311 Ark. 564, 845 S.W.2d 517, we upheld the trial court's granting summary judgment to Dr. Eck on the grounds that Ms. Tullock's claim was barred by the two-year statute of limitations. In that case, Ms. Tullock alleged that on November 30, 1987, Dr. Eck negligently prescribed an estrogen supplement to her knowing that she had a mass in her breast and that she had not had a biopsy performed. Ms. Tullock refilled the prescription on June 9, 1988, and again on November 10, 1988, providing her with medication until May 1989. When Ms. Tullock saw a different doctor in June of 1989, she discovered that the mass in her breast was malignant and that the cancer was estrogen dependent. She filed suit against Dr. Eck in December of 1990, approximately three years and one month following the alleged negligent act of prescribing the estrogen. This court concluded that because the negligent act or

conduct occurred on November 30, 1987, when Dr. Eck pre-
scribed the estrogen, and because Ms. Tullock had no further con-
tact with Dr. Eck, other than refilling the prescription, the continu-
ous treatment doctrine did not apply. The factual situation in
*Tullock* is comparable to this case in that Ms. Tullock was able to
identify the single act of negligence, the initial prescription of
estrogen. Ms. Tullock was not placed in the awkward and often
impossible position of trying to identify the harmful act amongst a
series of otherwise unharmful acts.

   In the case at hand, appellant complains of only one
single, isolated act of negligence which occurred on August 26,
1991, during the induction of anesthesia immediately before the
decedent's surgery. No further acts of negligence occurred. Further-
more, appellees Dr. McMahen, the surgeon, Dan Bocan, the anes-
thetist, and the three nurses, P. Clark, K. Whitehead, and R. Can-
terbury had no further participation in the treatment of decedent
up to the time of his death on September 5, 1991. The mere fact
that the decedent remained in the hospital under a doctor's care
until his death does not demonstrate a continuing course of *improper*
treatment which would toll the statute of limitations and, therefore,
we decline to apply the doctrine to the facts of this case. Were we to
hold otherwise, the statute of limitations would cease to exist in
instances where a single act of malpractice is followed by the pro-
longed hospitalization and subsequent death of the patient, even
though the hospitalization and subsequent treatment were com-
pletely appropriate. Further, were this court to reverse the trial
court's ruling, our decision would directly conflict with the General
Assembly's manifest intent to bar all medical malpractice claims not
filed within two years from the date the wrongful act occurred.

   We conclude that the trial court correctly ruled that the
date this cause of action accrued was August 26, 1991, the date the
medical injury or wrongful act occurred. Because appellant did not
file the initial complaint until September 7, 1993, her claim is
barred by the statute of limitations, and as such, we conclude the
appellees were entitled to summary judgment as a matter of law.

### III. SUBSTITUTION OF PARTIES

   Lastly, appellant argues that she should have been al-
lowed to substitute herself as the decedent's administratrix as the
real party in interest in this action as provided in section 16-62-101.

That section, which provides for the survival of actions the decedent may have brought on his own, also allows an executor or administrator of a decedent's estate to sue on the decedent's behalf for the pain and suffering experienced by the decedent prior to his death. Akin to the provisions for wrongful death found in section 16-62-102, section 16-62-101 provides for a three-year statute of limitations period within which to file survival claims. Appellant asserts her claim was one of medical malpractice, wrongful death, and survival, as she alleged damages for the pain and suffering of the decedent. Appellant argues that the trial court erred in not recognizing that, subsequent to this cause of action being filed, appellant had been named as administratrix of the decedent's estate, and in refusing to allow her to substitute herself in that capacity as the real party in interest to the survival action. Based on our previous rulings in *Ruffins*, 313 Ark. 175, 853 S.W.2d 877, and *Hertlein*, 323 Ark. 283, 914 S.W.2d 303, that any claim involving an act of medical injury is encompassed in the provisions of the Medical Malpractice Act, it is not necessary to address this argument as we have already determined that this case is one of medical malpractice, and the applicable statute of limitations period is two years. Thus, any survival claim appellant may have had is similarly barred.

Affirmed.

GLAZE and BROWN, JJ., concur.

NEWBERN and ROAF, JJ., dissent.

TOM GLAZE, Justice, concurring. I concur only because this court has held in two 4-3 decisions that the three-year statute of limitations for wrongful death is not applicable when a party's death resulted from a medical injury. *See Hertlein* v. *St. Paul Fire and Marine Insurance Co.*, 323 Ark. 283, 914 S.W.2d 303 (1996); *Ruffins v. ER Arkansas, P.A.*, 313 Ark. 175, 853 S.W.2d 877 (1993). I dissented in both *Hertlein* and *Ruffins*, but my position on this limitations issue is aptly and strongly stated in Justice Corbin's dissent in *Ruffins*, as follows:

> Without overruling *Matthews* or any of our subsequent cases, the majority attempts to distinguish our subsequent cases to reach the holding that an action for wrongful death resulting from medical injury is subject to the provisions of the Medical Malpractice Act enacted by Act 709 of 1979. This is the crux of my dissent. One only has to read *Mat-*

*thews, Simmons First Nat'l Bank, Dawson, Brown I, Bailey,* and *Brown II* to reach the inescapable conclusion that this court has recognized unwaveringly for a quarter of a century that an action for medical malpractice and an action for wrongful death are separate causes of action even though they may arise from the same negligent acts. For this court to *"distinguish"* these cases so as to reach an opposite conclusion is an intellectual feat that I suspect exceeds our profession's ingenuity. While this issue will be moot in the future by virtue of our decision in *Weidrick* v. *Arnold,* 310 Ark. 138, 835 S.W.2d 843 (1992), we should follow the precedent which applies to this case.

While I remain of the view that this court reached the wrong holdings in *Hertlein* and *Ruffins,* there presently are not enough members of this court who would overrule those decisions. As a consequence, I am compelled to join the majority decision, but will do so by concurring and, at the same time, mentioning that I will be more than susceptible to overruling *Hertlein* and *Ruffins* if this court should decide to do so in the future.

ROBERT L. BROWN, Justice, concurring. I concur in the result.

One issue in this case raises the identical issue that this court confronted in *Hertlein* v. *St. Paul Fire and Marine Ins. Co.,* 323 Ark. 283, 914 S.W.2d 303 (1996) — whether a general applicability clause in the Medical Malpractice Act operates to eliminate a separate cause of action for wrongful death which arises out of a medical injury. The relevant clause in the Medical Malpractice Act reads: "This subchapter applies to all causes of action for medical injury accruing after April 2, 1979, and, as to such causes of action, shall supersede any inconsistent provision of law." Ark. Code Ann. § 16-114-202 (1987). It is clear to me that this clause must be read in the context of the Medical Malpractice Act (Ark. Code Ann. §§ 16-114-201 through 16-114-209 (1987 & Supp. 1995)), which relates to causes of action for medical negligence, and not as a repealer to our separate Wrongful Death Act (Ark. Code Ann. § 16-62-102 (Supp. 1995)).

I dissented in *Hertlein* and said:

> Because of today's opinion, the survivor of a person who dies two years after suffering a medical injury has no cause of action for wrongful death. Wrongful death actions

have existed in this state since 1883. *Bell* v. *Estate of Bell*, 318 Ark. 483, 885 S.W.2d 877 (1994) (citing Act 53 of 1883). Had the General Assembly desired to repeal the wrongful death cause of action for medical injuries in any respect, it could easily have done so in 1979 by a specific repealer in the Medical Malpractice Act. It did not. Nor did it do so after our decision in *Brown* v. *St. Paul Mercury Ins. Co., supra,* where we expressly affirmed use of the statute of limitations under the Wrongful Death Act for a medical injury. Now, almost 20 years after the enactment of the Medical Malpractice Act, we hold that a repeal was contemplated. I cannot make that interpretative leap.

The majority decision in *Hertlein* decides the issue in this case. I still maintain, though, that had the General Assembly intended to repeal the wrongful death cause of action for medical injuries, it could have clearly and specifically done so in 1979. It did not. It takes more, in my opinion, than a general applicability statement to eliminate a cause of action in Arkansas. I commend this matter to the General Assembly for renewed legislative scrutiny.

DAVID NEWBERN, Justice, dissenting. In paragraph V of her second amended complaint, Lorine Pastchol alleges that Dr. Scott McMahen rendered medical care to Idell Burton in August and September, 1991. That allegation has not been rebutted by any affidavit or other evidence presented by Dr. McMahen or any other defendant. A material factual issue thus remains. Ark. R. Civ. P. 56(c).

The error made by the Trial Court in rendering summary judgment and perpetuated here is illustrated by this statement from the majority opinion:

> We believe appellant's reliance on the doctrine of continuous treatment is misplaced, as that doctrine was not designed to extend the statute of limitations period in cases where only a single, isolated act of malpractice or negligence is alleged.

That statement ignores one of the logical bases of the rule illustrated in these statements we made in *Tullock* v. *Eck,* 311 Ark. 564, 845 S.W.2d 517 (1993):

> If a physician is negligent in treating a patient but the patient continues to be treated by the physician for the

condition which was the object of the negligent act or treatment, the patient should not be required to interrupt the treatment to bring suit against the physician because a statute of limitations is about to run. That is the most often stated rationale for the "continuous treatment doctrine" which tolls the statute of limitations until treatment is discontinued. *Lane v. Lane*, 295 Ark. 671, 752 S.W.2d 25 (1988); *Rountree v. Hunsucker*, 833 S.W.2d 103 (Tex. 1992).

\*\*\*

[I]f the treatment by the doctor is a continuing course and the patient's illness, injury, or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated.

\*\*\*

[T]he continuous treatment doctrine becomes relevant when the medical negligence consists of a negligent act, followed by a continuous course of treatment for the malady which was the object of the negligent treatment or act.

While these statements may be regarded as *obiter* in view of our holding in the *Tullock* case that there had been no continuing treatment by the physician for the malady which was the subject of the initial treatment, the rationale stated there was clear. Here we ignore it. Summary judgment should not have been granted at least as to the complaint against Dr. McMahen.

I respectfully dissent.

ROAF, J., joins.