**Robert F. MEREDITH III and Carylyn Hancock, Co–Administrators of the Estates of Robert F. Meredith IV, Deceased, Plaintiffs.**

v.

**J.K. BUCHMAN, M.D.; J.K. Buchman, M.D., P.A.; and HCA Health Services of Midwest, Inc. d/b/a Columbia Doctors Hospital, Defendants.**

No. 4:99CV00418WRW.

United States District Court,
E.D. Arkansas,
Western Division.

June 20, 2000.

Winslow Drummond, McMath, Vehik, Drummond, Harrison & Ledbetter, P.A., Little Rock, AR, John P. Zelbst, Tommy L. Sims, John P. Zelbst Law Firm, Lawton, OK, for plaintiffs.

William M. Griffin, III, Friday, Eldredge & Clark, Little Rock, AR, for JK Buchman, M.D., defendant.

Mike Huckabay, Timothy L. Boone, Huckabay, Munson, Rowlett & Tilley, P.A., Little Rock, AR, for HCA Health Services of Midwest, Inc., defendant.

## ORDER

WILSON, District Judge.

Plaintiffs filed this action on behalf of the estate of Robert F. Meredith IV, claiming damages for injuries caused by medical treatment which resulted in the death of Robert F. Meredith IV, on April 30, 1998. In addition to the decedent's economic losses and conscious pain and suffering, Plaintiffs seek damages for mental anguish on behalf of his beneficiaries. The parties agree, for the limited purpose of the motions considered here, that Meredith's death was caused by medical malpractice.

Defendants have filed motions for partial summary judgment (Doc. No. 22 & 25) arguing that this action is controlled by the Medical Malpractice Act [1] which provides damages only for the injured person, not the beneficiaries. Plaintiffs have responded (Doc. No. 30), and Defendants J.K. Buchman, M.D., and J.K. Buchman, M.D., P.A, have replied. The Court heard oral arguments and the motions are ready for decision. For the reasons set forth below, Defendants' motions are DENIED.

### I. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.1987); Fed.R.Civ.P. 56. The Supreme Court has established guidelines to assist trial courts

---

1. Ark.Code Ann. § 16–114–201, *et seq.*

in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transp. Co. v. United States*, 600 F.2d 725 (8th Cir.1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. MK–Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268,

273–274 (8th Cir.1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## II. Analysis

"At common law, death of the injured person abated any cause of action that he might have maintained." HENRY WOODS & BETH DEERE, COMPARATIVE FAULT 3D. § 9:1 (1996). Survival Acts were enacted to cure this deficiency. Arkansas' Survival Statute, codified at Ark.Code Ann. § 16–62–101 (enacted first in 1838), allows the administrator of the estate of the deceased to recover, on behalf of the estate, expenses suffered by the decedent prior to his death such as medical expenses, lost earnings and conscious pain and suffering. The administrator may also recover for funeral expenses.

Common law also "denied the spouse and next of kin any right to recover for their own loss." HENRY WOODS & BETH DEERE, COMPARATIVE FAULT 3D, § 9:1 (1996). "Lord Campbell's Act was passed in 1846 to alleviate this harsh rule." *Id.* Arkansas Wrongful Death Statute, codified at Ark. Code Ann. § 16–62–102 (enacted first in 1883), provides that statutory beneficiaries of the decedent can recover for economic and non-economic losses they suffered due to the decedent's death.

Thus, under current Arkansas law, when a person's death is caused by the negligence of another, two causes of action arise. *See Matthews v. Travelers Indemnity Ins. Co.*, 245 Ark. 247, 249, 432 S.W.2d 485, 487 (1968).[2] First, there is a cause of action for the estate under the survival statute, and, second, there is a cause of action for the statutory beneficiaries under the wrongful death statute.

---

**2.** The issue in *Matthews* dealt with the applicable statute of limitations and the holding of the court on that point was superseded by the 1979 codification of the Medical Malpractice Act, as interpreted by subsequent decisions of the Arkansas Supreme Court. *See, e.g., Pastchol v. St. Paul Fire & Marine Ins. Co.*, 326 Ark. 140, 144, 929 S.W.2d 713, 715 (Ark. 1996). However, the recognition of the two separate causes of action has not been overruled, nor, this Court believes, has it been superseded.

In 1979, the Arkansas General Assembly passed the Medical Malpractice Act, codified at Ark.Code Ann. § 16–114–201, et seq., which states that it applies to "all causes of action for medical injury accruing after April 2, 1979, and, as to such causes of action, shall supersede any inconsistent provision of law." Ark.Code Ann. § 16–114–202.

■ The question presented by the motions for partial summary judgment is whether the Medical Malpractice Act has superseded the damages provision of the Wrongful Death Act in cases where death is caused by medical negligence. To accept Defendants' interpretation of the Medical Malpractice Act would be to revert to pre–1846—before Lord Campbell's Act was passed.

This is a diversity action. The Eighth Circuit has stated the prevailing rule that a federal court, sitting in diversity, "must follow state law as announced by the highest court in the state.... When the highest court in a state has not declared its law on an issue, we are 'to ascertain from all the available data what the state law is and apply it.'" *Reliance Nat'l Indem. Co. v. Jennings,* 189 F.3d 689, 694 (8th Cir.1999) (citing *West v. American Tel & Tel Co,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). *See, e.g., Farr v. Farm Bureau, Ins. Co.,* 61 F.3d 677, 679 (8th Cir.1995) (holding that in determining what the Nebraska Supreme Court would probably hold, it could consider "relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data.").

The Arkansas Supreme Court has not directly considered the question presented here. Recently, Pulaski County Circuit Court Judge David B. Bogard addressed the issue in *Moore v. Beverly Enter.— Arkansas, Inc.,* Pulaski County Circuit Court Case No. CV 99–2178, May 5, 2000.[3] In his opinion, attached as Exhibit A, Judge Bogard held that "the language of the Medical Malpractice Act limits recovery for mental anguish and economic losses to the 'injured person', not that person's beneficiaries." *See id.* State circuit opinions, however, are not controlling precedent for this Court.[4] Rather, it is this Court's duty to determine what the Arkansas Supreme Court " 'would probably hold were it to decide the issue[s]' raised in [this case]." *See Warford v. State Farm Mut. Auto. Ins. Co.,* 69 F.3d 860, 862 (1995).

Defendants cite a case in which the Arkansas Supreme Court held that "any medical injury, even one resulting in the death of a person, is governed by the Medical Malpractice Act and not the wrongful-death statute." *Pastchol v. St. Paul Fire & Marine Ins. Co.,* 326 Ark. 140, 144, 929 S.W.2d 713, 715 (1996). *Pastchol,* however, did not hold that the Medical Malpractice Act completely superseded the Wrongful Death Act. It merely held that where there is a conflict between the two statutes—as there is with the statute of limitations—the Medical Malpractice Act trumps. *See id.* This is in accord with the language of the Medical Malpractice Act which provides that it "shall su-

---

3. Following Judge Bogard's opinion, this issue has been the subject of many motions for partial summary judgment across the state. The results are mixed.

Special Judge Randall L. Williams recently issued an opinion in Cleburne County Circuit Court concluding, like Judge Bogard, that the Medical Malpractice Act "specifically sets forth the persons entitled to seek and recover damages." *See Estate of Oretha Bruins v. C & C Healthcare, Inc.,* Cleburne County Circuit Court Case No. CIV 97–118, May 30, 2000. This opinion is attached as Exhibit B.

On the other hand, Craighead County Circuit Court Judge John Fogleman has ruled to the contrary in a one sentence opinion. *See Rook v. Strauss,* Craighead County Circuit Court Case No. CIV–99–62(F), June 6, 2000. The opinion and a transcript of Judge Fogleman's oral findings of fact and conclusions are attached as Exhibit C.

4. In fact, the parties agreed during oral argument, that this Court should view the Arkansas Circuit Court opinions as if they were briefs, not precedent.

persede any **inconsistent** provision of law." Ark.Code Ann. § 16–114–202 (emphasis added). It does not purport to supersede laws that are consistent.

■■■ Is the Wrongful Death Act inconsistent with the Medical Malpractice Act? "The basic rule of statutory construction to which all other interpretive guides must defer is to give effect to the legislative intent underlying the statute." *Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n.*, 69 Ark.App. 323, 13 S.W.3d 197, 200 (2000). "As far as practicable, we must give effect to every part of the statute, reconciling the different provisions to make them consistent, harmonious, and sensible." *McGee v. Armorel Pub. Sch.,* 309 Ark. 59, 63, 827 S.W.2d 137, 139 (1992).

Defendants' argument and Judge Bogard's opinion focus on the language of the Medical Malpractice Act, Ark.Code Ann. § 16–114–208, which provides:

(a)(1) The damages awarded may include compensation for actual economic losses recognized by law suffered by the injured person by reason of medical injury including, but not limited to, the cost of reasonable and necessary medical services, rehabilitation services, custodial care, loss of services, and loss of earnings or earning capacity;

(2) The damages awarded may include compensation for pain and suffering and other noneconomic loss recognized by law;

(b) In the event of a verdict for the plaintiff, the finder of fact shall separately state its awards for both past and future economic losses and for both past and future noneconomic losses;

(c)(1) In the event of a judgment for the plaintiff, if the award for future damages exceeds one hundred thousand dollars ($100,000) the court may, at the request of either party, order that the future damages of the injured person exceeding one hundred thousand dollars ($100,000) be paid in whole, or in part, by periodic payments as determined by the court, rather than by lump sum payment, on such terms as the court deems just and equitable.

(2) As a condition to authorizing periodic payments of future damages, the court may order a judgment debtor who is not adequately insured to post security adequate to assure full payment of such damages.

(3) In the event of the death of the injured person prior to completion of installment payments of principal and interest upon motion of any party in interest, the court shall modify the order by deducting from the remaining balance the amount representing unpaid compensation for future pain and suffering and future expenses of care and by ordering the remainder to be paid into and become a part of the estate of the decedent.

Ark.Code Ann. § 16–114–208.

This section addresses only damages for losses suffered by the injured person. *See id.* Judge Bogard, after examining this section, decided that the Medical Malpractice Act "specifically sets forth the damages that are recoverable in a medical malpractice action." *See Moore v. Beverly Enter.—Arkansas, Inc.,* Pulaski County Circuit Court Case No. CV 99–2178, May 5, 2000. This Court respectfully disagrees with the reasoning and conclusion in *Moore* —and agrees with the opinion of Circuit Judge John Fogleman in *Rook v. Strauss,* Craighead County Circuit Court Case No. CIV–99–62(F), June 6, 2000.

A careful reading of the entire section indicates that the purpose of the section was not to eliminate wrongful death damages in medical malpractice cases, or to delineate the damages allowed in medical malpractice cases, but rather to determine how damages to the injured person would be awarded, to allow for installment pay-

ments in certain situations, and to provide for the reduction of damages if the injured person died before all the installment payments were made. The title of the section, "Damage awards—Periodic payment of future damages." plainly supports this conclusion.

Additionally, the title of the Medical Malpractice Act, as it was originally passed in 1979, stated:

> An Act to Govern Actions for Medical Injury; to Establish the Burden of Proof, Qualifications for Expert Testimony, and Limitations of Acts in Such Actions; to Require a Notice of Intent to Sue Prior to the Filing of Such Actions; to Eliminate the Ad Damnum Clause in Complaints in Actions for Medical Injury; *to Establish the Method of Awarding Damages in Such Actions;* to Prohibit Baseless Pleadings Therein; and for Other Purposes.

1979 Ark. Acts 709 (emphasis added). So, the stated purpose of this provision in the Act was not to limit the persons to whom damages might be awarded, but to establish the method of awarding damages to the injured person.[5]

As earlier indicated, Defendants argue that, by passing the Medical Malpractice Act the Arkansas General Assembly repealed the Wrongful Death Act in cases where the death caused by a medical injury. In arguing for repeal, Defendants have assumed a heavy burden. "Repeal by implication is not a favored device in our interpretation of statutes, and we must construe all statutes relating to the same subject matter together." *Robinson v.*

Langdon, 333 Ark. 662, 669, 970 S.W.2d 292, 295 (1998) (citing *Waire v. Joseph,* 308 Ark. 528, 825 S.W.2d 594 (1992)).

■ "Legislative acts relating to the same subject or having the same purpose must be construed together and in harmony if possible.... In construing such statutes, it is presumed that when the general assembly passed the latter act, it was well aware of the prior act." *Seward v. The Bud Avants Co.,* 65 Ark.App. 88, 95, 985 S.W.2d 332, 335 (1999) (interpreting two statutes related to Worker's Compensation and payment of claimant's attorney fees) (citing *Reed v. State,* 330 Ark. 645, 957 S.W.2d 174 (1997)). Thus, it is presumed that the General Assembly was well aware of the Wrongful Death Act at the time it passed the Medical Malpractice Act.

Was it the intent of the 1979 Arkansas General Assembly to repeal the Wrongful Death Act—to prevent the beneficiaries of one whose death is caused by medical negligence from being compensated for their loss?

First, the General Assembly did not specifically say so. Defense counsel conceded at oral argument that had the Medical Malpractice Act repealed the Wrongful Death Act in medical malpractice cases, the repeal would have been, by far, the most significant part of the Act. Defense counsel argues that the other "expense" provisions of the Act (such as periodic payments) would do little to lower the cost of medical care (the stated purpose of the Act):[6] ergo. Defendants argue, the legis-

---

5. Defendants rely in part upon *HCA Health Servs. v. National Bank of Commerce,* 294 Ark. 525, 745 S.W.2d 120 (Ark.1988). If anything, however, *HCA* supports Plaintiffs' position that the Medical Malpractice Act was not designed to limit the types of damages available. The court in *HCA* allowed plaintiffs to recover punitive damages—even though punitive damages are not specifically listed in the Medical Malpractice Act. Damages under the Wrongful Death Act were not an issue in *HCA.*

6. The Medical Malpractice Act contained an Emergency Clause which provided:

> It is hereby found, determined and declared by the General Assembly that the threat of legal actions for medical injury have resulted in increased rates for malpractice insurance which in turn causes and contributes to an increase in health care costs placing a heavy burden on those who can least afford such increases and that the threat of such actions contributes to expensive medical procedures to be preformed by physicians and others which otherwise would not be

lature must have intended to revoke the claims of the decedent's beneficiaries. Otherwise, there would be no real cost reduction effected by the statute. Notwithstanding the statute is effective in reducing medical costs, the Court believes that if such a monumental change (the eradication of damages for beneficiaries) to the Wrongful Death Statute had been intended, the legislature would have said so.

Second, as defense counsel also conceded in oral argument, the malpractice defense lawyers who helped draft the 1979 Medical Malpractice Act never contended that it eradicated damages for the statutory beneficiaries.[7] These able lawyers who drafted the 1979 Act defended wrongful death, medical malpractice actions through the years without ever raising the issue— even once. This question was raised for the first time 21 years after the Medical Malpractice Act was passed. (This Court asked movant's counsel—only partially in jest—if we should assume that the distinguished authors of the Act regularly committed legal malpractice by not invoking the dispositive defense that they and the General Assembly purportedly intended.)

In AMI 104, we direct juries that:

In considering the evidence in this case you are not required to set aside your common knowledge, but you have a right to consider all the evidence in the light of your own observations and experiences in the affairs of life.

Should a Judge do less? It defies common sense to believe that able defense lawyers, including lawyer legislators, drafted the Medical Malpractice Act to remove all damages for statutory beneficiaries in malpractice death actions, but failed to raise the point for 21 years.

Third, "[t]he General Assembly is presumed to be familiar with this Court's interpretations of its statutes, and if it disagrees it can amend the statutes." *Lawhon Farm Serv. v. Brown*, 335 Ark. 276, 281, 984 S.W.2d 1, 5 (1998). It has done so *sua sponte*, and quickly, on other occasions. *See* Ark.Code Ann. 16–22–301 (Michie Repl.1999).[8]

The Arkansas Supreme Court has considered wrongful death damages in medical injury cases on numerous occasions. *See, e.g., Ford v. St. Paul Fire & Marine Ins. Co.*, 339 Ark. 434, 5 S.W.3d 460 (1999); *Looney v. Bolt*, 330 Ark. 530, 955 S.W.2d 509 (1997); *Pastchol v. St. Paul Fire & Marine Ins. Co.*, 326 Ark. 140, 929 S.W.2d 713 (1996); *Hertlein v. St. Paul Fire & Marine Ins. Co.*, 323 Ark. 283, 914 S.W.2d 303 (1996); *Ruffins v. ER Arkansas, P.A.*, 313 Ark. 175, 853 S.W.2d 877 (1993); *Simmons First National Bank v. Abbott*, 288 Ark. 304, 705 S.W.2d 3 (1986). Since the

---

considered necessary and that this Act should be given effect immediately to help control the spiraling cost of health care. Therefore, an emergency is hereby declared to exist, and this Act being necessary for the immediate preservation of the public peace, health and safety shall be in full force and effect from and after its passage and approval.

1979 Ark. Acts 710, Section 11.

7. Counsel conceded during oral arguments that the Medical Malpractice Act was primarily authored by several malpractice defense lawyers.

8. It is hereby found and determined by the General Assembly of the State of Arkansas that the Supreme Court, in *Henry, Walden, and Davis v. Goodman*, 294 Ark. 25, 741 S.W.2d 233 (1987), limited the existing At-

torney's Lien Law by allowing only a quantum meruit recovery in a case in which the attorney was dismissed by the client; that the Supreme Court's interpretation of the Attorney Lien is contrary to what was intended by the enactment of Acts 59 and 306 of 1941, the Attorney Lien Law; that an attorney should have the right to rely on his contract with his client; and that the Attorney's Lien Law should be reenacted to protect the contractual rights of attorneys. Therefore, it is the intent of §§ 16–22–302 – 16–22–304 to allow an attorney to obtain a lien for services based on his or her agreement with his or her client and to provide for compensation in case of a settlement or compromise without the consent of the attorney.

Ark.Code Ann. § 16–22–301 (Michie Repl. 1999) (originally enacted as 1989 Ark. Acts No. 293).

General Assembly is presumed to keep up with court interpretations of its enactments, and since this would have been a blockbuster of a change—if it had been intended—it is hard to believe that the General Assembly would have ignored the Supreme Court's long term failure (see the cases cited above in this paragraph) to recognize its intent to deny compensation to widows, widowers, and orphans—even if the authors of the Medical Malpractice Act and other lawyers "neglected" to raise the point.

This Court has come to the firm conviction that no one—not a soul—who was involved in the enactment of the Medical Malpractice Act of 1979 intended for it to repeal damages for statutory beneficiaries, and none of the people (lawyers or legislators) involved in the enactment ever came to believe that it did—at least, not until the year 2000.

## III. Conclusion

This Court is persuaded beyond per adventure that none of those involved in the enactment of the Medical Malpractice Act ever had any notion that it would deprive widows, widowers, and orphans of their claims under the Wrongful Death Act. Once one reaches this conclusion, the question becomes whether the General Assembly repealed those damages in such clear language that we cannot look to other precedent, or rely upon common sense, to determine legislative intent—or, more precisely, lack of intent. This Court doesn't think so.

This Court believes that the Arkansas Supreme Court would find that the damage provisions of the Medical Malpractice Act and the Wrongful Death Act damages for beneficiaries are consistent and complementary.[9] Therefore, Defendants' motions for partial summary judgment are DENIED.

9. This conclusion moots the necessity of examining the remaining arguments raised in

Exhibit A

**In the Circuit Court of Pulaski County, Arkansas, Sixth Division**

Alean Moore, Individually and as Special Administratrix of the Estate of Louise Glasper; Arthur Lee Glasper, Nathaniel Glasper, Dorothy Rodgers, Claine Maxwell, and Estella Owens, Plaintiffs,

vs.

Beverly Enterprises–Arkansas, Inc., dba Beverly Health and Rehabilitation, Willamsburg, Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On this date, the Defendant's motion for Partial Summary Judgment came before the Court for its consideration. This lawsuit was filed under the Arkansas Medical Malpractice Act, ACA Sec. 16–14–201, *et. seq.*, alleging liability arising out of Ms. Moore's mother's death subsequent to a second period of time in a nursing home operated by the Defendant. The complaint alleges the Defendant committed numerous wrongs against the decedent, including: 1) failure to provide adequate nutrition, 2) failure to provide adequate medical, nursing and custodial care, and 3) failure to provide adequate hygiene. The complaint alleges more specifically the Defendant failed to turn and position the decedent, causing her to develop pressure sore which were properly treated after they developed. This allegedly led to the development of septicemia and required hospitalization and the amputation of the decedent's left leg below the knee. The Defendant is also accused of placing new dressings over old dressings on the decedent's wounds and of failing to control the

Plaintiffs' response brief.

pain attendant to such sores. Ms. Moore, as personal representative of the decedent, prays for damages sustained by the decedent. In addition, the Plaintiff also requests damages for mental anguish on behalf of seven heirs to the decedent's estate, including herself.

The Defendant requests partial summary judgment alleging "wrongful death" damages may not be recovered by the decedent's beneficiaries in a medical malpractice case. In response, the Plaintiffs argue the Medical Malpractice does not limit eliminate the damages recoverable from a decedent's beneficiaries under the Wrongful Death Act and that the damages provisions under each of the acts are consistent with each other.

The Wrongful Death Act, ACA Sec. 16–62–101, *et. seq.*, creates a class of beneficiaries who may recover for their own mental anguish and pecuniary losses. However, the Medical Malpractice Act creates no such class of beneficiaries, even if the medical injury results in death. The Medical Malpractice Act expressly "applies to all causes of action for medical injuries accruing after April 2, 1979, and, as to such causes of action, shall supercede any inconsistent provision of law." ACA Sec. 16–114–202. Any medical injury, even one resulting in the death of a person, is governed by the Medical Malpractice Act and not the wrongful-death statute. *Pastchol v. St. Paul Fire & Marine Insurance Company*, 326 Ark. 140, 929 S.W.2d 713 (1996). The Arkansas Medical Malpractice Act specifically sets forth the damages that are recoverable in a medical malpractice action:

> (a)(1) The damages awarded may include compensation for actual economic losses recognized by law suffered by the **injured person** by reason of medical injury, including, but not limited to, the cost of reasonable and necessary medical services, rehabilitation services, custodial care, loss of services and loss of earnings or earning capacity;

> (2) The damages awarded may include compensation for pain and suffering **and other noneconomic loss recognized by law;**

> (b) in the event of a verdict for the plaintiff, the finder of fact shall separately state its award for both past and future economic losses and for both past and future noneconomic losses[.]

ACA Sec. 16–114–208 (emphasis added).

The Court agrees with the Defendant that the language of the Medical Malpractice Act limits recovery for mental anguish and economic losses to the "injured person", not that person's beneficiaries. The Court interprets ACA Sec. 16–114–208 to allow recovery of noneconomic losses suffered by the *injured person* which are recoverable at law. Thus, the beneficiaries of one who has died as a result of alleged medical malpractice are unable to recover damages for their own mental anguish and pecuniary losses. Therefore, the Defendant's Motion for Partial Summary Judgment is hereby GRANTED.

IT IS SO ORDERED.

/s/ David B. Bogard
David B. Bogard
Circuit Court Judge

5/3/00
Date

Exhibit B

### In the Circuit Court of Cleburne County, Arkansas

Estate of Oretha Bruins, Plaintiff,

vs.

C & C Healthcare, Inc. d/b/a/ Lakeland Lodge, Defendant.

### *ORDER*

There is pending before the Court a Motion for Partial Summary Judgment filed on behalf of Defendant on May 18, 2000. The Motion concerns the claim of Oscar E. Bruins for mental anguish in his own right. Based upon the Motion and Brief filed on behalf of the Defendant,

statements of counsel and other facts and matter on file with the Clerk of the Court, the Court being well and sufficiently advised finds:

1. This is a medical malpractice lawsuit for personal injuries allegedly sustained by Oretha Bruins as a result of Mrs. Bruins' confinement in Lakeland Lodge. As such, the existence, recoverability or viability of any and all claims or purported claims is controlled by the provisions of Ark.Code Ann. § 16–114–201, *et seq.*, Arkansas' Medical Malpractice Act.

2. The Arkansas Medical Malpractice Act (Ark.Code Ann. 16–114–208(a)(1)) specifically sets forth the persons entitled to seek and recover damages and provides:

The damages awarded may include compensation for actual economic losses recognized by law suffered by the *injured person* by reason of medical injury including, but not limited to, the costs of reasonable and necessary medical services, rehabilitation services, custodial care, loss of services, and loss of earnings or earning capacity;

(2) The damages awarded may include compensation for pain and suffering and other non-economic loss recognized by law; . . . .

3. Family members such as husbands and children have no claim for damages arising out of an alleged injury or death to a family member.

4. Oscar E. Bruins has no individual claim for any damages of any kind or nature associated with any alleged injuries that may have been sustained by Oretha Bruins.

5. The Estate of Oretha Bruins is not entitled to claim, seek or recover damages on behalf of any individual or individuals under any theory other than a claim for damages allegedly incurred by Oretha Bruins.

IT IS, THEREFORE, BY THE COURT, CONSIDERED, ORDERED AND ADJUDGED:

1. That based upon the findings of fact and conclusions of law set forth above, the claim or purported claim of Oscar E. Bruin for mental anguish be, and the same is hereby dismissed with prejudice;

2. That the damages which the Estate of Oretha Bruins may seek to recover are limited to compensation for actual economic losses recognized by law suffered by Oretha Bruins including, but not limited to, the cost of reasonable and necessary medical services, rehabilitation services, custodial care, loss of services, loss of earnings or earning capacity, pain and suffering and other non-economic loss recognized by law, if any, actually suffered by Oretha Bruins.

This 30th day of May, 2000.

/s/ Randall L. Williams
CIRCUIT JUDGE

Exhibit C

In the Circuit Court of Craighead County Arkansas, Western District

Talmage Rook, as Personal Representative of the Estate of Sarah Diane Rook, Deceased, Plaintiff,

vs.

Mark Strauss, M.D., Harold Chakales, M.D., St. Paul Fire and Marine Insurance Co., and St. Vincent Infirmary Medical Center, Defendants.

### ORDER

The Court hereby denies the Motions for Partial Summary Judgment by all defendants.

/s/ John N. Fogelman
Circuit Court Judge

Date of Entry:
6/6/00

THE COURT: This case presents a really interesting and difficult issue for the

Court. The Medical Malpractice Act by its own terms applies to all causes of action for medical injury, and as to those causes of action, supercedes any inconsistent provision of law. Of course, the question for this Court is whether or not the provisions of the Wrongful Death Act, all of the provisions, are inconsistent with the Medical Malpractice Act.

Any time there's a—Almost any time, almost every times there's the death of a person there are two separate causes of action because as Prosser said—This is from Prosser on Torts, and this is an old edition, Fourth Edition, 1971, page 898: Under the common law death gave rise to no causes of action and terminated all those for personal courts. In order for there to be a cause of action of any sort, either for the losses or injuries suffered by the injured person or for his family, the legislature had to take some action. In Arkansas, as in most states, there are survival statutes and there are wrongful death statutes, and they are two separate causes of action: A cause of action being asserted by typically an administrator of the deceased seeking compensation for physical and mental anguish suffered by the deceased as well as the other general damages that would be allowed to the deceased had they survived, and a cause of action for wrongful death. And ours is modeled after Lord Campbell's Act, which creates a cause of action, the surviving spouse and his beneficiaries for the loss— the pecuniary injuries suffered by those persons as a result of the death as well as mental anguish, and they are two separate causes of action.

This is a suit for medical injury. There's no question about that. The motion for summary judgment is restricted to the claim for the wrongful death damages of mental anguish or pecuniary loss for decedent's family. Of course, those damages could include loss of support for the spouse and children, also parental love, care, supervision, training, and I don't know whether those apply in this case or not, mental anguish of survivors.

If the legislature intended, or if the effect of the legislation is to do away of wrongful death damages in a medical malpractice case, or a case subject to Medical Malpractice Act, it not only would—Well, it could have devastating effects to a family in a case where there are—could be astronomical damages as a result of the loss of a young parent or parent with young children who dies on an operating table almost instantaneously where he has no mental anguish, he has no medical expenses associated with the loss, with the negligence; he himself doesn't. Of course, that's not really the issue except to the extent whether or not the legislature intended to repeal damages for wrongful death in cases where there could be such catastrophic losses and whether or not they would basically completely do away with the cause of action and not say it.

The term "injured person" which is contained in—throughout the Medical Malpractice Act, is not defined.

The defense has made a persuasive argument that it wouldn't include the statutory beneficiaries in a wrongful death case. The term "medical injury" is defined to mean any adverse consequences arising out of professional services being rendered by a medical care provider. It could be easily argued that the losses suffered by wife and other beneficiaries would certainly arise out of adverse consequences of professional services rendered by a medical care provider and, therefore, those losses fall within the definition of medical injury, and they would be the injured person by that, not the patient, and that may be stretching it to say that that's what the legislature intended. Truthfully, I don't believe that the legislature even contemplated this problem when they enacted the Medical Malpractice Act. I don't think that occurred to them. I think if it had occurred to them, they would have said so and would have specifically stated that the Wrongful Death Act has no application at

all to cases of medical injury. There is in the legislation a repealer clause, 16–114–202, which I have already read from, which repeals any inconsistent provision of law, and I suppose that's an express complete repealer clause, but it doesn't specify what sections of law are repealed. In fact, Justice Brown has described a repealer as a general repealer in the Hertlein case in the dissenting opinion. Justice Brown in that case states that in doing what the court did it construes a general repealer clause in the Medical Malpractice Act as repealing the Wrongful Death Act for such injuries. General repealer clauses are not favored unless there is plain conflict between the two statutes.

There is no clear intent that the legislature intended to repeal causes of action for wrongful death existing in beneficiaries. The Medical Malpractice Act in Section 16–114–208 in describing the damages— the interesting thing about the section argued that this section limits the damages only to the damage that could have been recovered by the patient and say that's the person, and that looking at the emergency clause, that this Medical Malpractice Act was really intended to limit the damages that could be recovered. But if you read—Just looking at it from the standpoint of the injured person as the patient, it in no way limits the damages recoverable by that person. In fact, it leaves it open. It says damages awarded may include. It is not restrictive. It is open. May include, and it lists certain items. Then it says "including, but not limited to these items." And then in Subsection 2, A–2, the damages awarded may include compensation for pain and suffering and other non-economic loss recognized by law.

Of course, to argue that the wrongful death damages of the beneficiaries is absorbed under this provision about other damages recognized by law, it can't be because it says "non-economic damage", and there can be economic loss in wrongful

death cases, so that doesn't answer the question either.

One of the rules of statutory construction, and it's cited in—quoted in the plaintiff's brief from the Donoho case, is the court has held that a basic and fundamental rule when considering the effect of statutes is that repeal by implication is not favored and is never allowed except where there is such an invincible repugnancy between the former and latter provisions that both cannot stand together.

Significantly, when the construction of a statute is at issue, the statute should be given that interpretation that will sustain rather than defeat it, and effect must be given, if possible, to every part of the statute. In construing a statute, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its power, full knowledge of legislation on the same subject, and full knowledge of judicial decisions under pre-existing law ... We must also give effect to the legislature's intent, making use of common sense and giving word their usual and ordinary meaning.

The motion for partial summary judgment filed by the defendants is being denied by the Court. I find that the language in the Medical Malpractice Act setting forth damages that may be recovered applies to the survival action, does not address the wrongful death action; that the Court, in trying to determine whether the legislature has repealed the wrongful death action in a case of medical malpractice, finds that a cause of action that existed prior to the enactment of legislation should not be found to be entirely repealed without the legislature expressly saying so, and that to somehow assume that our part-time legislature envisioned this circumstance and intended to repeal the Wrongful Death Act as it applies to medical malpractice actions is not using common sense in interpreting the legislation, and for that reason it will be denied.

It is a shame that you can't go ahead and appeal it because this is an issue that needs to be decided.