# United States Court of Appeals

### FOR THE EIGHTH CIRCUIT

_____

No. 02-1450

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Jeremy William Coyle, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 10, 2002
Filed: November 7, 2002

_____

Before HANSEN, Chief Judge, RICHARD S. ARNOLD and LOKEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Armed with a knife, Jeremy Coyle entered a car occupied by a mother and her ten-month-old daughter and made the mother drive them from Missouri to Arkansas. When the car experienced mechanical difficulties along the way, Coyle ushered them into another stolen car and continued driving. He released them in Arkansas.

Coyle was apprehended and pleaded guilty to two counts of kidnaping, in violation of 18 U.S.C. § 1201(a)(1) (Counts I and II); one count of carjacking, in violation of 18 U.S.C. § 2119 (Count III); and one count of transporting a stolen car

in interstate commerce, in violation of 18 U.S.C. § 2312 (Count IV). The district court[1] sentenced him to concurrent prison terms of 135 months on Counts I through III and 120 months on Count IV, and concurrent five-year terms of supervised release.

On appeal, Coyle challenges two of the district court's Sentencing Guidelines calculations to which he objected below. For the following reasons, we affirm.

I.

Coyle's adjusted offense level for Count I (kidnaping the mother) was twenty-five. His base offense level was twenty-four under U.S. Sentencing Guidelines Manual §2A4.1(a) (2001), he received a two-level enhancement under USSG §2A4.1(b)(3) for using a dangerous weapon, and he received a one-level reduction under USSG §2A4.1(b)(4)(C) for releasing the victim within twenty-four hours.

Coyle's adjusted offense level for Count II (kidnaping the baby) was twenty-seven. The calculations were the same as for Count I, except that he also received a two-level enhancement under USSG §3A1.1(b)(1) because the ten-month-old child was a vulnerable victim.

For Count III (the carjacking), the robbery Guideline was applied, see USSG App. A, and Coyle's adjusted offense level was thirty-two. His base offense level was twenty under USSG §2B3.1(a), he received a four-level enhancement under USSG §2B3.1(b)(2)(D) for using a dangerous weapon, he received a four-level enhancement under USSG §2B3.1(b)(4)(A) for abducting a person to facilitate commission of the offense or to facilitate escape, he received a two-level enhancement under USSG

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

2

§2B3.1(b)(5) because the robbery offense "involved carjacking," and he received the two-level vulnerable-victim enhancement due to the child victim.

Coyle's adjusted offense level for Count IV (transporting the stolen vehicle) was twelve. Applying the Guideline for offenses involving stolen property, see USSG App. A, his base offense level was six under USSG §2B1.1(a), he received a four-level enhancement under USSG §2B1.1(b)(1)(C) because the value of the stolen car was between $10,000 and $30,000, and he received the two-level vulnerable-victim enhancement.

Under the grouping rules, Count I (kidnaping the mother) and Count III (carjacking) were grouped together because the kidnaping embodied conduct--abduction--that formed the basis of an enhancement to the offense level for the carjacking.[2] See USSG §3D1.2(c). The offense level for that group, Group 1, was thirty-two because the carjacking count within that group had the higher adjusted offense level. See USSG §3D1.3(a). Count II (kidnaping the infant) and Count IV (transporting the stolen car in interstate commerce) were not grouped together because they did not involve the same victim, see USSG §3D1.2(a)-(b), the embodied-conduct rule did not apply to them, see USSG §3D1.2(c), and they were specifically excluded from being grouped under the rule dealing with aggregate harm, see USSG §3D1.2(d). Under the grouping rules, however, each of those two counts was treated as a separate "single-count group"--an oxymoron that results from USSG §3D1.2, comment. (n.7)--for the purpose of determining any additional punishment.

The combined offense level for Group 1 (consisting of Counts I and III) was then enhanced by one level, to thirty-three, pursuant to the following calculations:

---

[2] The presentence report (PSR) noted that Count III could have been grouped with either Count I or Count II, but the outcome would have been the same. (PSR ¶40.)

Group 1 was assigned one "unit;" Group 2, the single-count group consisting of Count II, was assigned a "half-unit" because it was between five and eight levels less serious than Group 1, the group carrying the highest offense level; and Group 3, the single-count group consisting of Count IV, was disregarded--that is, it added nothing to the combined offense level--because it was nine or more levels less serious than Group 1. See USSG §3D1.4(a)-(c). Coyle's offense level for Group 1 (the group containing Counts I and III) was increased by one level because one-and-a-half "units" resulted from the grouping. Finally, Coyle received a three-level reduction for acceptance of responsibility, see USSG §3E1.1(a)-(b), reducing his total combined offense level to level thirty.

## II.

First, Coyle argues that the district court engaged in impermissible double-counting by applying the vulnerable-victim enhancement both to the adjusted offense level for Group 1 (by virtue of the enhancement having been applied to one of the grouped counts, the carjacking) and to the adjusted offense level for Count II/Group 2 (the single-count group consisting of the kidnaping of the baby). "'Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" United States v. Hawkins, 181 F.3d 911, 912 (8th Cir.) (quoted source omitted), cert. denied, 528 U.S. 981 (1999).

We conclude that this alleged error is harmless. If the enhancement had not been applied to Count II to avoid double-counting, its adjusted offense level would have been twenty-five. Group 2 still would have been assigned a "half-unit" because it would still have been between five and eight levels less serious than Group 1, and Coyle's total offense level would have remained the same.

4

Coyle argues in the alternative that if the enhancement was properly applied in both instances, then Count II had to be grouped with Count III under the embodied-conduct rule of §3D1.2(c). We again conclude that this alleged error did not affect Coyle's sentence. As the PSR noted, if Count III had been grouped with Count II rather than Count I, the outcome would have been the same. The adjusted offense level for that two-count group would have remained thirty-two, Count I standing alone as a single-count group would have been assigned a "half-unit" because it would have been between five and eight levels less serious than the two-count group, and Coyle's total offense level would have been the same.

Coyle presented these double-counting and grouping arguments in his brief. At oral argument, however, he advanced the argument that the district court erred in applying the vulnerable-victim enhancement to Count III because the baby was not a victim of the carjacking. We respectfully decline to consider this argument because it differs significantly from the approach taken in the brief. See Roberts v. Francis, 128 F.3d 647, 650 n.3 (8th Cir. 1997); Universal Towing Co. v. Hartford Fire Ins. Co., 421 F.2d 379, 381 (8th Cir. 1970). Coyle's brief mentioned his position that the baby was not a victim of the carjacking twice in passing (Appellant's Br. at 7, 9), only as a very minor subset of his seven-page double-counting argument (id. at 7-13). Whether the baby was a victim of the carjacking is a different issue than whether double-counting occurred. If Coyle wanted us to consider as a stand-alone argument whether the baby was a victim of the carjacking, that argument should have been presented as such in the brief, supported by citations to legal authority. Because that was not done, we decline to address the argument.

III.

Second, Coyle argues that the district court erred as a matter of law by enhancing Counts I and II under USSG §2A4.1(b)(3) for using a dangerous weapon because he merely brandished or displayed the knife. To "use" a weapon in this

context means to do more than possess, brandish, or display it.  See USSG §2A4.1, comment. (n.2); USSG §1B1.1, comment. (n.1(f)).  Our review is de novo.  See United States v. Smotherman, 285 F.3d 1115, 1116 (8th Cir. 2002) (district court's application and construction of Guidelines are reviewed de novo).

The mother testified under oath at sentencing that when Coyle entered her car, he had a knife in his left hand which he placed on her leg and said, "don't say anything, just drive."  When they stopped at a gas station and she balked at leaving the car to pump gas, Coyle pointed the knife at her infant daughter and said, "you don't care about her either, you don't care about your daughter?"  As a result of this implied threat, she agreed to pump the gas.  (Sent. Tr. at 5-7.)  The district court credited the mother's testimony.  (Id. at 16.)

Although there are no cases in this circuit addressing a §2A4.1(b)(3) enhancement, the enhancement for using a dangerous weapon under §2B3.1(b)(2)(D) is premised on identical conduct.  See USSG §2A4.1, comment. (n.2); USSG §2B3.1, comment. (n.1).  In the context of a §2B3.1(b)(2)(D) enhancement, we have previously held that placing a knife against a person's throat to facilitate cooperation with a robbery constitutes use of a dangerous weapon.  See United States v. Elkins, 16 F.3d 952, 953-54 (8th Cir. 1994).  Likewise, we conclude that Coyle's holding a knife against the mother's leg to facilitate her cooperation with the carjacking constitutes use of a dangerous weapon.  Our conclusion is reinforced by Coyle's subsequent act of pointing the knife at the baby to secure the mother's cooperation.

IV.

For the reasons stated above, we affirm the judgment of the district court.

6

A true copy.

Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.